**BEST HOMES, INC., an Illinois Corp., Appellant–Defendant,**

v.

**Patty Lou RAINWATER, as Administratrix of the estate of Herbert W. Rainwater, Jr. and Patty Lou Rainwater, Appellees–Plaintiffs.**

No. 45A05–9903–CV–107.

Court of Appeals of Indiana.

July 19, 1999.

John H. Lloyd, IV, Galvin, Galvin & Leeney, Hammond, Indiana, Attorney for Appellant.

Andrew A. Crosmer, Rubino & Crosmer, Munster, Indiana, Attorny for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Best Homes, Inc. ("Best Homes") brings this interlocutory appeal of the denial of its motion for partial summary judgment with respect to the claim filed by Appellee–Plaintiff Patty Lou Rainwater, individually, and as Administratrix of the Estate of Herbert W. Rainwater, Jr., deceased ("Rainwater"), under Indiana's Wrongful Death Statute, IND.CODE § 34–23–1-1 (formerly IND.CODE § 34–1–1–2). Best Homes asserts that Rainwater's lawsuit may proceed only under Indiana's Survivorship Statute, IND.CODE § 34–9–3–4 (formerly IND. CODE § 34–1–1–1). We affirm.

### Issue

Best Homes raises an issue with multiple subparts which we restate as whether Rainwater's suicide constituted an independent intervening and superseding cause so as to break the chain of causation and render Best Home's negligence a remote cause, as opposed to a proximate cause, of Rainwater's death.

### Facts/Procedural History

The designated evidence most favorable to the nonmovant Rainwater reveals that, on December 19, 1996, Rainwater was seriously injured in a construction site accident as the result of Best Homes' negligence. (R. 232). Rainwater's arm was fractured in two places, requiring the insertion of plates and other hardware in his arm through the course of two surgeries. (R. 232). Rainwater and his wife filed their initial complaint against Best Homes on May 9, 1997. (R. 8–11).

Rainwater's injuries caused him considerable pain, prevented him from working, created financial hardship, and caused stress in his marriage. (R. 242–43, 246, 256). Rain-

water took pain medication at least three times a day and became addicted to the painkillers. (R. 256–57, 261). He also received periodic "nerve block" treatments. (R. 256). Rainwater's inability to work made him feel "useless," that he was not a "whole person," and that he was not living up to his responsibilities as a husband and father. (R. 243, 252–53, 258). Ultimately, Rainwater became unbearable to live with and he and his wife divorced. (R. 242–43). Rainwater's former spouse testified in her deposition that the accident "really put him in a total state of depression." (R. 243). Nevertheless, Rainwater continued to reside with his former spouse. (R. 242).

On August 31, 1997, Rainwater became very despondent, "did not look like himself," and insisted upon being left alone. (R. 245). That evening, Rainwater's former spouse received a call from the Sheriff who informed her that Rainwater had just called "911." (R. 245–46). Rainwater's former spouse checked on him, discovered that he had taken some amount of his medication, and observed that he was mumbling. (R. 246, 248). Rainwater became violent and grabbed his former spouse by the throat. (R. 247). Later, Rainwater, who appeared disoriented, threatened to burn the house down, and lit some paper on fire. (R. 249–50). When Rainwater's former spouse intervened, he struck her in the jaw. (R. 250). The police were summoned and Rainwater was arrested and taken to jail. (R. 233, 261). While in jail, Rainwater banged on the door of the "tank" with his hands and head and yelled profanities. (R. 261). Police sprayed him with foam to subdue him. (R. 261). Later, Rainwater committed suicide by hanging himself from the bunk in his cell. (R. 261).

On October 27, 1997, the complaint was amended substituting Rainwater's Estate as the plaintiff requesting damages under the alternate theories of Indiana's Wrongful Death Statute and Indiana's Survivorship Statute. (R. 48–49).[1]

---

1. Indiana trial rules expressly permit parties to plead inconsistent, alternative claims. Ind. Trial Rule 8(E); 15(A); *Palacios v. Kline*, 566 N.E.2d 573, 576 (Ind.Ct.App.1991) (noting that there is no limitation upon the trial court's discretion in

permitting amendments which change the cause of action or the theory of the complaint); *Cahoon v. Cummings*, No. 79A05–9801–CV–026 (Ind.Ct. App. June 30, 1999) slip op. at 16–27, —— N.E.2d ——, —————— (holding that plaintiff could pur-

Best Homes moved for partial summary judgment on the wrongful death claim asserting that Rainwater's suicide was an independent intervening and superseding cause which served to cut off the liability of Best Homes for Rainwater's death. Best Homes' motion was denied and this properly certified discretionary interlocutory appeal ensued.

### Discussion and Decision

*A.  Statutory Background—A Comparison of Actions brought under the Wrongful Death Statute and the Survivorship Statute*

The Wrongful Death Statute provides a cause of action when *"the death is caused by the wrongful act or omission* of another." IND.CODE § 34–23–1–1 (emphasis added). In contrast, the Survivorship Statute applies when a person:

(1) receives personal injuries caused by the wrongful act or omission of another; and

(2) subsequently dies *from causes other than those personal injuries.*

IND.CODE § 34–9–3–4 (emphasis added).

■■■ A comparison of the language of the two statutes reveals that, a tortfeasor may be held liable under *either* the Wrongful Death Statute or the Survivorship Statute, *but not both. See American International Adjustment Co. v. Galvin,* 86 F.3d 1455, 1457 (7th Cir.1996). If the victim dies from injuries sustained in the accident, the case falls under the Wrongful Death Statute. *Id.* If, however, the victim dies from unrelated causes, the case falls under the Survivorship Statute. *Id.* As noted by the *American International* court:

The distinction is important because each statute allows for different recoveries. In a case governed by the survival statute, [the estate] could receive full damages including pain and suffering. Under the wrongful death statute, the estate could recover only [the decedent's] medical and

funeral expenses plus any other pecuniary or other loss suffered by her survivors. *Id.* at 1457–58. In an action brought under the Wrongful Death Statute, a personal representative may recover damages "including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person." IND. CODE § 34–23–1–1; *Ed Wiersma Trucking Co. v. Pfaff,* 643 N.E.2d 909, 911 (Ind.Ct.App. 1994) (noting that recovery under the wrongful death statute is limited to the pecuniary losses suffered by those for whose benefit the action may be maintained), *adopted,* 678 N.E.2d 110. In an action brought under the Survivorship Statute, "the personal representative of the decedent may recover *all damages resulting before the date of death* from those injuries that the decedent would have been entitled to recover had the decedent lived." IND.CODE § 34–9–3–4 (emphasis added).

### B.  Standard of Review— Summary Judgment

■■■ As stated in *Barnes, as Mayor of the City of Gary v. Antich,* 700 N.E.2d 262, 264–65 (Ind.Ct.App.1998), *trans. denied:*

In reviewing a motion for summary judgment, this court applies the same standard as the trial court. We must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by T.R. 56, the nonmovant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under

sue the inconsistent remedies prescribed by Indiana's Wrongful Death Statute and Indiana's Survivorship Statute but could not obtain a double recovery for the same injury); *see also American International Adjustment Co. v. Galvin,* 86 F.3d 1455, 1457 (7th Cir.1996) (noting that the

doctrine of the election of remedies had been abolished under Fed.R.Civ.P. 8(e)(2) such that an Estate could prosecute inconsistent, alternate theories under Indiana's Wrongful Death Statute and Survivorship Statute).

the rule, which show the existence of a genuine issue for trial. A trial court's grant of summary judgment is 'clothed with a presumption of validity,' and the appellant bears the burden of demonstrating that the trial court erred.

As noted in *Nelson v. Jimison,* 634 N.E.2d 509, 512 (Ind.Ct.App.1994):

Summary judgment must be denied if the resolution hinges upon state of mind, credibility of the witnesses, or the weight of the testimony. Mere improbability of recovery at trial does not justify the entry of summary judgment against the plaintiff. On a motion for summary judgment, the evidence must be construed in favor of the nonmovant, and any doubt about the existence of a genuine issue of material fact must be resolved against the moving party.

(citations omitted).

## C. Proximate Cause—Summary Judgment in Negligence Cases

Summary judgment is rarely appropriate in negligence cases. *McKinney v. Public Service Co.,* 597 N.E.2d 1001, 1005 (Ind.Ct.App.1992). Proximate cause is an essential element of a negligence claim. *Id.; Jarrell v. Monsanto Co.,* 528 N.E.2d 1158, 1163 (Ind.Ct.App.1988). A negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated. *Havert v. Caldwell,* 452 N.E.2d 154, 158 (Ind.1983); *Woods v. Qual–Craft Industries, Inc.,* 648 N.E.2d 1198, 1202 (Ind. Ct.App.1995). The question of causation is usually inappropriate for summary disposition because it often requires a weighing of disputed facts. *Smith v. Beaty,* 639 N.E.2d 1029, 1035 (Ind.Ct.App.1994). Ordinarily, the issue of proximate cause is a question for the jury and is not properly resolved by summary judgment. *Wolfe v. Stork RMS– Protecon, Inc.,* 683 N.E.2d 264, 268 (Ind.Ct. App.1997); *Montgomery Ward & Co. v. Gregg,* 554 N.E.2d 1145, 1156 (Ind.Ct.App. 1990).

## D. Intervening and Superseding Cause

Where harmful consequences are brought about by intervening and independent forces which were not reasonably foreseeable at the time of the defendant's conduct, the chain of causation is broken and the intervening cause may serve to cut off the defendant's liability. *Havert,* 452 N.E.2d at 158–59. As noted above, ordinarily, the issue of proximate cause is not properly resolved by summary judgment. *McKinney,* 597 N.E.2d at 1005–06; *Montgomery Ward,* 554 N.E.2d at 1156. However, where the injuries could not, as a matter of law, have been reasonably foreseen due to the unforeseeability of an intervening, superseding cause, summary judgment may appropriately be entered in favor of the defendant. *Havert,* 452 N.E.2d at 159; *Wolfe,* 683 N.E.2d at 268.

## E. Suicide as Intervening and Superseding Cause of Death

It is well-settled in Indiana that: If the decedent at the time of taking his life had mind enough to know what he wanted to do, and how to do it, the line of causation from the accident to the death would be broken by the act of suicide, and the latter would be the proximate cause of his death. From the cases bearing upon the subject now being considered the rule seems to be that an action under the [wrongful death] statute may be maintained when the death is self-inflicted, only where it is the result of an uncontrollable influence, or is accomplished in delirium or frenzy, caused by the defendant's negligent act or omission, and without conscious volition of a purpose to take life; for then the act would be that of an irresponsible agent.

*Brown v. American Steel & Wire Co.,* 43 Ind.App. 560, 88 N.E. 80, 85 (1909); *See also, Kimberlin v. DeLong,* 637 N.E.2d 121, 126 (Ind.1994). In the relatively recent case of *Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 521 (Ind.1994), our supreme court held:

[S]uicide constitutes an intervening cause only if it is the 'voluntary' and 'willful' act of the victim. Suicide induced by mental illness so severe that one cannot direct

one's conduct does not constitute an intervening cause. We cannot say as a matter of law that the trial court erred in refusing to grant summary judgment for [the defendant] on this issue because the trial court may well have concluded that a genuine issue of material fact remained as to whether [decedent's] suicide attempt was voluntary or whether it was involuntarily induced by a reaction to his drug addiction.

### F. Analysis

 Best Homes argues that Rainwater's wrongful death claim must fail because no expert, medical evidence was presented on the issue of decedent's sanity to demonstrate a causal link between the original injury and decedent's death. (Appellant's brief at 7, 9; Appellant's reply brief at 4–5). However, it is well-settled that a fact-finder may consider lay testimony on the issue of sanity. *Gambill v. State*, 675 N.E.2d 668, 672 (Ind. 1996) (noting that a jury may reject expert testimony in favor of lay testimony on the issue of sanity); *Matter of Estate of Belanger*, 433 N.E.2d 39, 43 (Ind.Ct.App.1982) (noting that lay testimony concerning decedent's state of mind or mental state is admissible).

The designated evidence submitted in the present case revealed that the personal injuries suffered by Rainwater in the accident caused severe pain and prevented him from working resulting in severe depression and an addiction to pain medication. Shortly before the suicide, Rainwater called 911, strangled and beat his former spouse, and tried to set the house on fire. After being arrested, Rainwater beat his head and hands on the door of his cell until police subdued him with foam. After that, Rainwater hanged himself in his cell.

The resolution of the present case hinges upon determinations of proximate cause and decedent's state of mind, matters which ordinarily must be decided by the jury and not by way of summary judgment motion. *See McKinney*, 597 N.E.2d at 1005–06 (holding that issue of whether death was proximately caused by intervening and superseding cause was not appropriately resolved by summary judgment); *Nelson*, 634 N.E.2d at 512 (hold-ing that issue which hinged upon state of mind was not appropriately resolved by summary judgment). Under these facts, a jury could reasonably conclude that decedent's suicide was accomplished in delirium or frenzy and was not a voluntary and willful act. Therefore, we cannot conclude as a matter of law that the trial court erred in refusing to grant partial summary judgment with respect to Rainwater's wrongful death claim because a genuine issue of material fact remains as to whether decedent's suicide was voluntary or whether it was induced by mental illness and/or drug addiction. *See Hooks SuperX*, 642 N.E.2d at 521.

Affirmed.

GARRARD, J., and HOFFMAN, Sr. J., concur.