**TACK'S STEEL CORPORATION,**
**Appellant/Third–Party**
**Defendant,**

v.

**ARC CONSTRUCTION CO.,**
**INC., Appellee/Third–**
**Party Plaintiff.**

No. 82A01–0404–CV–191.

Court of Appeals of Indiana.

Feb. 2, 2005.

W.F. Conour, Chad L. Hanefeld, Conour Law Firm LLC, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant/Third–Party Defendant Tack's Steel Corporation ("Tack's") appeals a summary judgment requiring Tack's to indemnify Appellee/Third–Party Plaintiff ARC Construction Co., Inc. ("ARC") in the amount of $425,000.00, and to pay attorney fees of $42,786.91, prejudgment interest and costs. We reverse and remand.

### Issues

Tack's presents four issues for review, which we consolidate and restate as [1]:

I. Whether there exists a genuine issue of material fact precluding summary judgment, because Tack's is not bound to an allocation of its comparative fault within an Agreed Entry to which Tack's is not a party;

II. Whether the attorney fees provision of the indemnification agreement between Tack's and ARC provides for attorney fees incurred to enforce the indemnification agreement; and

III. Whether this Court has jurisdiction to calculate the amount of a worker's compensation lien, which is the subject of a pending declaratory judgment.

### Facts and Procedural History

On May 12, 1997, ARC, the general contractor for the construction of a facility to be known as Victory Theatre in Evansville,

Theodore J. Blanford, Adam A. Carroll, Hume Smith Geddes, Green & Simmons, LLP, Indianapolis, IN, Attorneys for Appellant.

---

1. ARC requests that this Court limit its consideration to a single issue, the issue raised by Tack's in its Motion to Correct Error. We reject ARC's request, as the Indiana Appellate Rules do not limit consideration of issues on appeal to those previously raised by a party on a Motion to Correct Error.

Indiana, entered into a Subcontract Agreement with Tack's. The Subcontract Agreement included a provision requiring Tack's to indemnify ARC for losses, including bodily injury, arising out of Tack's work performance or nonperformance.

On November 17, 1997, while employed as an ironworker for Tack's, David Scott ("David") was injured in a fall at the Victory Theatre construction site. On November 16, 1998, David and his wife Dana (hereinafter "the Scotts") filed a complaint against ARC and Danco Construction Inc. ("Danco"). On March 17, 2000, ARC filed a third-party complaint for indemnification against Tack's and a cross-claim against Danco.

On June 25, 2001, the trial court approved an agreement between ARC and the Scotts, and entered judgment as follows:

> JUDGMENT BE, and hereby is, entered in favor of the Plaintiffs, DAVID SCOTT and DANA SCOTT on the Complaint against the Defendant, ARC CONSTRUCTION CO., INC. in the total sum of One Million Two Hundred and Seventy–Five Thousand and 00/100 Dollars ($1,275,000.00) based solely upon its contractual vicarious liability for the negligent acts of its subcontractors, TACK'S STEEL CORPORATION and DANCO CONSTRUCTION, INC. and their breaches of contract.

(App.38.) Danco also reached a settlement with the Scotts.

The Scotts and ARC executed a "Loan Receipt Agreement and Assignment of Claims" whereby ARC advanced the Scotts $425,000.00, repayable at the rate of "$.50 on the Dollar" for every dollar received from Tack's in excess of $425,000.00, but in the event the assigned claim yielded no more than $425,000.00, repayable only upon the occurrence of either of the following contingencies:

(a) If either Plaintiffs DAVID or DANA inherits or obtains a windfall, including lottery winnings, of Two Million and 00/100 Dollars ($2,000,000.00) or more; and

(b) For every year in which Plaintiffs DAVID and DANA have net taxable income of One Hundred Thousand and 00/100 Dollars ($100,000.00) or more, they agree to pay Ten Thousand and 00/100 Dollars ($10,000.00) toward repayment of the loan until paid in full.

(App.43.) The agreement also contained the following provisions:

> Defendant ARC hereby assigns to Plaintiffs DAVID and DANA, jointly and severally, all right, title and interest in all claims of Defendant ARC against Third–Party Defendant TACK'S, whether filed or not, whether currently known or not, whether by contract, common law or otherwise, and with regard to or which arise out of the construction project at Victory Theatre in Evansville, Indiana, at which Plaintiff DAVID was injured on November 17, 1997, specifically including, but not limited to, indemnity and breach of contract claims.

> Plaintiffs DAVID and DANA agree to pay all amounts which may be owed to the worker's compensation carrier and any amounts owed on medical liens out of any judgment on the assigned claims against Third–Party Defendant TACK'S and further agrees to hold the Defendant ARC and its insurer harmless with regard to any worker's compensation lien and defend ARC on any attempt by Defendant TACK'S or its insurer to collect or recover on a worker's compensation lien.

(App.43.) On July 18, 2001, Tack's filed an "Objection to Agreed Judgment and Motion to Find Agreed Judgment Non-bind-

ing as to Tack's Steel." (App.17.) On November 5, 2001, the trial court granted ARC summary judgment on the issue of its right to indemnification from Tack's. On December 28, 2001, ARC filed a "Motion to Bind Tack's to the Judgment and to Estop Tack's from Challenging it." (App.14.)

On April 22, 2002, the trial court made the following record entry:

The court having had ARC's Motion to Bind Tack's to the Judgment and to Estop [sic] Tack's from Challenging it under advisement, now grants said motion and finds Tack's is bound by the terms of the judgment between the Scotts and ARC and that Tack's is responsible to ARC for its portion of fault for the damages sustained by the Scotts for which ARC was vicariously liable under the judgment. Accordingly, the court enters judgment in favor of ARC against Tack's for the amount of ARC's payment pursuant to the Agreed Judgment, entered into by Danco, the Scotts and ARC, plus pre-judgment interest from the date of that judgment to the date of this ruling, plus all attorneys fees and expenses incourred [sic] by ARC herein. Mr. Conour to furnish proposed entry for the court's consideration.

(App.13.) The proposed entry was not furnished. On June 7, 2002, ARC filed a Motion for Proceedings Supplemental. ARC also submitted affidavits on attorney fees. On June 11, 2002, Tack's moved to stay proceedings supplemental "pending motion for relief from the judgment." (App.12.) On July 2, 2002, argument was held on the motion for relief from judgment filed by Tack's. On July 24, 2002, the motion was denied.

On October 1, 2002, Tack's tendered to the Vanderburgh County Clerk a check for ARC, in the amount of $341,259.89, and the funds were dispersed to ARC, pursuant to the trial court's order of October 9, 2002. On October 3, 2002, Tack's filed a Motion to Order the Judgment Satisfied. On December 6, 2002, the trial court denied the motion for satisfaction and entered the following order:

The court, having had third party defendant, Tack's Steel Corporation[']s, Motion to Order Judgment Satisfied under advisement, now denies said motion. It is therefore ordered by the court that Tack's Steel Corporation, third-party defendant, as of 12/2/02, owes and is ordered to pay, ARC Construction Co. Inc., third-party plaintiff, $174,720.17 plus $37.78/day after 12/2/02.

(App.9.) On December 10, 2002, the court made the following docket entry:

Judgment against Deft[.] $174,720.17 Plus Interest and Court Cost of $104.00 for [a] total of $174,824.17.

(App.8.) On December 23, 2002, General Casualty Insurance Companies issued a check payable to the Scotts and their attorney in the amount of $175,362.43, and simultaneously demanded payment from the Scotts in the amount of $146,178.41 in satisfaction of a worker's compensation lien.

On January 6, 2003, Tack's filed a Notice of Appeal. On January 9, 2003, the Scotts filed a Complaint for Declaratory Relief to Compromise Subrogation Lien, naming as defendants Tack's and General Casualty Company of Wisconsin ("General Casualty"), the provider of worker's compensation benefits to employees of Tack's.

On November 5, 2003, this Court dismissed Tack's purported appeal for lack of jurisdiction, because the April 22, 2002 entry was not for a sum certain and thus was

not a final judgment.[2] *Tack's Steel v. ARC Constr. Co.*, 798 N.E.2d 566, slip op. at 7 (Ind.Ct.App., 2003). On December 8, 2003, Tack's moved for entry of final judgment. On December 9, 2003, ARC moved for "Entry of Final Judgment Nunc Pro Tunc," claiming that the judgment against Tack's was $491,320.24. (App.107.)

On February 2, 2004, the trial court entered its final judgment, which provided in pertinent part as follows:

> [A]n Agreed Judgment was entered in favor of David and Dana Scott against ARC Construction, Inc. in the net sum of $1,275,000 for ARC Construction, Inc.'s vicarious liability for the negligent acts of its subcontractors, Tacks Steel Corporation and Danco Construction, Inc. The Court further finds that ARC Construction Co., Inc. paid the total sum of $425,000.00 in a loan receipt to David and Dana Scott together with an assignment of its indemnity claim against Tacks Steel Corporation in compromise and satisfaction of its liability under the Agreed Judgment. The Court now finds that ARC Construction Co.'s Motion for Summary Judgment against Tacks Steel Corporation for indemnity, prejudgment interest and attorney fees should be granted. It is, therefore,
>
> ORDERED, ADJUDGED AND DECREED that Judgment be, and hereby is, entered against Tacks Steel Corporation and in favor of ARC Construction, Inc. in the sum of $425,000 together with prejudgment interest in the sum of

$23,333.33 and attorney fees in the amount of $42,786.91, and costs.

(App.46–47.)[3] On February 16, 2004, Tack's filed a motion to correct error, challenging the trial court's statement that the Agreed Judgment was for the "net sum" of $1,275,000.00, and contending that this sum was the "total amount" of the judgment, including allocations for the fault of David and Danco. (App.111–12.) On April 2, 2004, the trial court denied Tack's motion to correct error. This appeal ensued.

## Discussion and Decision

### I. Summary Judgment on Tack's Liability for Negligence

Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. On review of a trial court's decision to grant or deny summary judgment, this Court applies the same standard as the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct. App.1999). We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. *Id.* Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.*; *see also* Ind. Trial Rule 56(C), (H).

---

2. The court's order contemplated a "proposed entry for the Court's consideration" to follow. (App.13.) However, the proposed entry was not furnished, and the exact amount of attorney fees claimed was not ascertained until proceedings supplemental.

3. There has been much debate over the years of whether an agreed judgment is contractual in nature or a judicial act. *See Hanover Logansport, Inc. v. Robert C. Anderson, Inc.*, 512

N.E.2d 465, 470 (Ind.Ct.App.1987); *State ex rel. Prosser v. Ind. Waste Sys., Inc.*, 603 N.E.2d 181, 186 (Ind.Ct.App.1992). "Nevertheless, Indiana law and precedent repeatedly provide that agreed judgments do not represent the judgment of the court. The court merely performs the ministerial duty of recording the agreement of the parties." *Siegel v. Williams,* 818 N.E.2d 510, 514 (Ind.Ct.App.2004) (citing *Prosser,* 603 N.E.2d at 186).

A party seeking summary judgment bears the burden to make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Am. Mgmt., Inc. v. MIF Realty L.P.*, 666 N.E.2d 424, 428 (Ind.Ct.App.1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id.* The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind.2002).

On appeal, we will assess the trial court's decision to ensure that the parties were not improperly denied their day in court. *Id.* A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Cansler v. Mills*, 765 N.E.2d 698, 701 (Ind.Ct.App. 2002), *trans. denied.*

ARC's claim against Tack's arises from the indemnification provision of the Subcontract Agreement. Tack's does not contest the validity of the agreement or its indemnification provision. Rather than contesting its contractual liability, Tack's is contesting the fault allocation, via the Agreed Entry to which Tack's was not a party. In the Agreed Entry, approved by the trial court on June 25, 2001, ARC admitted that its subcontractor Tack's was 80% at fault in David's accident and vicariously accepted responsibility for that negligence.

■ The issue of whether a subcontractor could be held to an Agreed Judgment in which it was not a party arose in *GKN v. Starnes Trucking, Inc.*, 798 N.E.2d 548 (Ind.Ct.App.2003). Larry Magness ("Magness"), a truck driver employed by subcontractor Starnes, fell while working on a construction project for which GKN was the general contractor. *Id.* at 549. Magness sought recovery from GKN, and the trial court approved an Agreed Judgment between Magness and GKN, wherein Magness accepted responsibility for 20% of the negligence and GKN accepted responsibility for 80% of the negligence. *Id.* at 551. After settling with Magness, GKN brought an indemnity complaint against Starnes. *Id.* at 550. On appeal from the grant of summary judgment to Starnes, this Court recognized that a material issue of fact remained regarding Magness's negligence, reasoning as follows:

> Specifically, we need to determine whether Starnes can be held to the Agreed Judgment when Starnes was not a party to that judgment. We hold that it cannot. Although Starnes was not a necessary party to the Agreed Judgment, we believe that it would be unfair to allow GKN and Magness to create a judgment which, in essence, would force Starnes to pay for Magness's injuries. GKN has argued, and no doubt will argue again, that the Agreed Judgment makes Magness's negligence clear—that Magness was twenty per cent at fault. However, we are hesitant to agree with that conclusion. If we follow that reasoning, a general contractor will be able to approach an injured worker and offer that worker money for his injuries immediately and thereby allow the worker to collect his money without presenting evidence at trial. However, by admitting to a percentage of the negligence, the worker (perhaps unknowingly) binds the subcontractor to a judgment in

which the subcontractor is not a party. . . .

Here, GKN and Magness entered into an agreement in which GKN agreed to pay eighty percent of Magness's damages. However, any statements regarding Magness's admission of negligence are tantamount to dictum. Therefore, a genuine issue of material fact remains regarding Magness's negligence.

*Id.* at 555–56. In this case, the Agreed Entry, and subsequently the Agreed Judgment assigned fault as follows: 14% to David, 6% to Danco, and 80% to ARC "solely due to its vicarious contractual liability for its subcontractor, Third Party Defendant Tack's." (App.37.) Thus, without an evidentiary hearing, the parties to the Agreed Judgment merely assigned fault to Tack's, in an effort to force Tack's to pay for David's injuries. This is the very situation that the Court in *GKN* found non-binding as to the non-party to the Agreed Judgment.

Too, we are not persuaded by ARC's contention that Tack's should be estopped from challenging the Agreed Judgment adopting the Agreed Entry, because Tack's participated in mediation and had the opportunity to protect its interests but "chose to let ARC defend itself." Appellee's Br. at 10.

ARC contends this case is analogous to the situation in which an insurer/indemnitor who refused to protect its interests was collaterally estopped from challenging an admission of negligence made in a consent judgment by its insured/indemnitee, citing *Frankenmuth Mut. Ins. Co. v. Williams by Stevens*, 690 N.E.2d 675 (Ind.1997). An insurer who refuses to defend or clarify its obligation by means of a declaratory action does so at its peril. *Id.* at 679. However, the Agreed Entry at issue here involves an admission by an employee, whom Tack's had no duty to defend, as in *GKN*. Moreover, the parties to the Agreed Entry did not limit their admissions to their own affirmative negligence, but purportedly allocated negligence to Tack's.

There exists a genuine issue of material fact regarding the comparative negligence for which Tack's must contractually provide indemnification. An assessment of 80% may not merely be assigned to Tack's and summary judgment entered thereon, because this would preclude Tack's from having its day in court to present evidence. Accordingly, we reverse the summary judgment and remand to the trial court for the presentation of evidence relative to comparative fault.

## II. Attorney Fees

■ Absent statutory authority or contractual agreement, each party must pay his or her attorney fees. *Yates–Cobb v. Hays*, 681 N.E.2d 729, 734 (Ind.Ct.App. 1997). The Subcontract Agreement specifically includes indemnity for attorney fees, and Tack's does not contest its contractual obligation to reimburse ARC for the attorney fees incurred for its defense of the Scotts' tort claim.

■ However, Tack's claims it has no contractual obligation to reimburse ARC for attorney fees incurred in enforcing the indemnity agreement against Tack's. Tack's encourages a narrow interpretation of the attorney fees clause of the Subcontract Agreement, which provides as follows:

Subcontractor shall indemnify and hold harmless Owner and Contractor from and against any and all costs, losses, expenses, claims, and damages, including attorneys' fees arising out of or resulting from the performance or non-performance of Subcontractor's work or the breach of any of Subcontractor's agreements and obligations under this Agreement attributable to: (a) bodily

injury or death to persons, or damages to or destruction of property; (b) the failure on the part of Subcontractor to pay for any labor or materials utilized upon the project, including amounts that may be expended by Contractor to discharge any lien or claim therefore; (c) defects in Subcontractor's work. (App.34.) "An indemnitee is entitled to recover attorney's fees expended defending the underlying claim and prosecuting the claim for indemnification." *Bethlehem Steel Corp. v. Sercon Corp.*, 654 N.E.2d 1163, 1168 (Ind.Ct.App.1995) *trans. denied; accord Fort Wayne Lodge, LLC v. EBH Corp.*, 805 N.E.2d 876, 887 (Ind.Ct.App. 2004). An indemnitor aware of its duty to indemnify thus has incentive to promptly indemnify the indemnitee without litigation.

■ The indemnification clause here provides for indemnity for all losses and liability. As a general proposition, such broad clauses specifically including attorney fees encompass fees for prosecuting the claim for indemnification. Thus, the clause herein should not be so narrowly construed as to limit ARC to fees incurred in defending the original action, which it settled. However, the clause does not entitle ARC to reimbursement of fees incurred in vain attempts to bind Tack's to an agreement to which Tack's was not a party or to pursue proceedings supplemental when there existed no underlying judgment.

### III. Calculation of Worker's Compensation Lien

Tack's claims it has a right to a worker's compensation lien, pursuant to Indiana Code Section 22–3–2–13, which provides in pertinent part:

If the injured employee or his dependents shall agree to receive compensation from the employer or the employer's compensation insurance carrier or to accept from the employer or the employer's compensation insurance carrier, by loan or otherwise, any payment on account of the compensation, or institute proceedings to recover the same, the employer or the employer's compensation insurance carrier shall have a lien upon any settlement award, judgment or fund out of which the employee might be compensated from the third party.

Indiana Code Section 22–3–2–13 also provides for reduction of the lien for expenses, as follows:

[I]f the action against the other person is brought by the injured employee or his dependents and judgment is obtained and paid, and accepted or settlement is made with the other person, either with or without suit, then from the amount received by the employee or dependents there shall be paid to the employer or the employer's compensation insurance carrier, subject to its paying its pro-rata share of the expenses of the reasonable and necessary costs and expenses of asserting the third party claim, the amount of compensation paid to the employee or dependents[.]

Indiana Code Section 22–3–2–13 creates a lien on the recovery of the employee. The Scotts have received judgment proceeds and a "loan" with speculative repayment terms. They concede that they are liable for repayment of a worker's compensation lien of some amount. Too, the parties agree that the lien reduction statute, Indiana Code Section 34–51–2–19, is implicated.[4] However, the amount of the re-

---

4. Indiana Code Section 34–51–2–19 provides as follows:

If a subrogation claim or other lien or claim that arose out of the payment of medical expenses or other benefits exists in re-

duction is contested, as the parties dispute what degree of damages David sustained and received compensation for.

 Tack's has calculated its claimed worker's compensation lien, urging this Court to calculate the lien accordingly and allow immediate set-off from its payment to indemnify ARC. However, we lack jurisdiction to do so. When agreement cannot be reached, a declaratory judgment is the appropriate vehicle for determination of the lien amount. *Dep't of Pub. Welfare, State of Ind. v. Couch,* 605 N.E.2d 165, 168 (Ind.1992). It is appropriate for the declaratory judgment court to assess whether the claimant was reasonable under the circumstances in reaching a compromise settlement for less than full damages, thereby reducing the lienholder's recovery. *Id.*

Declaratory judgment proceedings are particularly appropriate in this case, to permit the development of relevant facts and to ensure that the appropriate parties to the lien are represented. The record before this Court indicates that, on December 23, 2002, General Casualty issued a demand letter for the payment by the Scotts of a worker's compensation lien in the amount of $146,178.41. It appears that General Casualty and the Scotts are the parties directly affected by the worker's compensation lien, rather than Tack's and ARC.

The complaint for declaratory relief has not culminated in a final judgment determining the rights of the parties with respect to the worker's compensation lien. It is the appropriate means by which the lien calculation dispute is to be resolved.

This Court lacks jurisdiction to calculate the lien as requested by Tack's.

### Conclusion

ARC is not entitled to summary judgment based on its assertion that comparative fault issues have been resolved in an Agreed Entry to which Tack's was not a party. The indemnification clause does not strictly limit recoverable attorney fees to those involved in settling the underlying claim, but ARC should not be reimbursed for fees incurred in attempting to force its settlement upon Tack's. Finally, this Court lacks jurisdiction to calculate Tack's claimed worker's compensation lien.

Reversed and remanded.

DARDEN, J., and MATHIAS, J., concur.

spect to a claim for personal injuries or death and the claimant's recovery is diminished:
(1) by comparative fault; or
(2) by reason of the uncollectibility of the full value of the claim for personal injuries or death resulting from limited liability insurance or from any other cause; the lien or claim shall be diminished in the same proportion as the claimant's recovery is diminished. The party holding the lien or claim shall bear a pro rata share of the claimant's attorney's fees and litigation expenses.