S.E. JOHNSON COMPANIES, INC.,
Appellant–Defendant,

v.

NORTHERN INDIANA PUBLIC
SERVICE COMPANY,
Appellee–Plaintiff.

No. 90A05–0512–CV–738.

Court of Appeals of Indiana.

June 21, 2006.

Publication Ordered Aug. 4, 2006.

Mark D. Ulmschneider, Andrew L. Teel, Steele, Ulmschneider & Malloy Fort Wayne, Indiana, Attorneys for Appellant.

Paul A. Rake, John M. McCrum, Eichhorn & Eichhorn Hammond, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant S.E. Johnson Companies, Inc. (Johnson) appeals the trial court's grant of summary judgment in favor of appellee-plaintiff Northern Indiana Public Service Company (NIPSCO), regarding NIPSCO's claim against it for negligence. Specifically, Johnson contends that the trial court erred in concluding that Johnson was negligent as a matter of law when one of its employees sawed through an underground natural gas pipe owned by NIPSCO while performing a construction project for the City of Fort Wayne (the City). In essence, Johnson contends that it was merely acting as an employee and following the City's instructions and, therefore, it was not subject to the provisions of the Damage to Underground Facilities Act (DUFA).[1] Concluding that summary judgment was properly entered for NIPSCO, we affirm the judgment of the trial court.

### FACTS

During the fall of 1999, Johnson was hired by the City to complete a road construction project that included an area on New Haven Avenue in Fort Wayne. Johnson had been awarded the project pursuant to a bidding process, and the City supplied it with a set of road plans. The plans were stamped with a "Holey Moley—Don't Dig Blind" icon and a toll-free telephone number. Appellant's App.

---

1. Indiana Code section 8–1–26, *et seq.*

p. 206. The purpose of the "Holey Moley" campaign was to "encourage contractors to call the number ... to ensure that when you're going to be cutting in the right-of-way that you're aware of where the facilities are so that you can limit the damage that might happen." *Id.* at 206–07. Among other things, the plans identified the location of a four-inch gas line that had been installed by NIPSCO in 1981. The gas line was marked with a "G" for gas. *Id.* at 206, 210–13.

When the project initially began in 1999, the City had spray painted the areas of pavement that they wanted Johnson to saw and remove. Johnson's project manager, Larry Houchins, called in for locations of underground facilities along New Haven Avenue. These locations were marked in painted colors that signified the particular service: yellow for gas, orange for telephone, and red for electric. While the markings indicated lateral location, they did not indicate depth.

Thereafter, on March 29, 2000, Houchins again telephoned for a location of underground facilities along New Haven Avenue, including the area where the gas pipe was located. Houchins was aware that the locate service had to be given two full days to complete the task. This particular request was the first one made that year for a locate on the project affecting the 4300 block of New Haven Avenue. Houchins sought to have the painted lines for the underground facilities re-marked, and he made the foreman of the crew, Chuck Mergy, aware that he had called in the locate. The locate request was made for work to be done on and after March 31, because Houchins believed that it did not need a locate for "sawing pavement," which was to be performed on March 30. Appellant's App. p. 92, 187–88. However, Mergy believed that a locate service is typically contacted to locate "[a]nything in the ground that is relevant to the Holey Moley deal." *Id.* at 92, 187–88, 217–19.

On March 30, when the employees at Johnson began sawing the pavement, neither the asphalt foreman nor Mergy were aware of the depth of the concrete through which the saw was cutting. The saw used to perform the work had a studded circular blade, approximately five to seven feet in diameter and four to five inches in width, and it could be deployed hydraulically to less than half its full height.

During this process, Johnson was unaware of the specific depths of the other layers of the road that the crew had drilled from the top of the roadbed, including the asphalt. Hence, without a locate, Mergy did not know the depth at which the gas line was buried. He was aware that locates had been made in the roadway from the previous fall, and that the reason for such locates was to identify the underground facilities existing beneath the roadway where the Johnson crew was performing its work. As a road contractor, Mergy did not often examine the road plans, and he agreed that the contractor relies upon the locator to inform him where underground lines are buried.

When the saw blade cut completely through the bottom of the concrete, it eventually ripped through NIPSCO's steel pipe, causing natural gas to escape. The fire department was summoned and a factory nearby was vacated. Thereafter, NIPSCO work crews were dispatched to the scene to make the repairs. To effect the repairs, NIPSCO servicemen had to cut out a four-foot by four-foot section of the concrete that the saw had cut through, and a new piece of steel that was approximately two feet in length had to be inserted. This piece was then attached to the existing pipe with couplings.

As a result of this incident, NIPSCO filed a complaint for damages against

Johnson on February 26, 2001, alleging that Johnson had violated DUFA and, as a result, damaged NIPSCO's utility facilities "through excavation, demolition or other means." Appellant's App. p. 8. Both parties filed motions for summary judgment, and following a hearing, the trial court granted summary judgment in favor of NIPSCO on October 17, 2005. In relevant part, the trial court's order granting Johnson's motion provided as follows:

(4) As an excavator, Johnson owed a duty under the Damage to Underground Facilities Act (DUFA) to serve notice upon NIPSCO and other affected utilities of its intent to excavate at least two (2) full working days before commencement of the work, including the starting date, anticipated duration and type of excavation to be conducted, the location of the proposed excavation, and the approximate depth of excavation.

(5) NIPSCO had a right to install its steel gas pipe beneath New Haven Avenue pursuant to Ind.Code 8–20–1–28 but it had no corresponding duty under DUFA, absent the prescribed notice, to notify Johnson, or to others using the roadway, of the existing depth of its service pipe; nor did NIPSCO owe a duty under DUFA to install or maintain its service pipe at a particular depth.

(6) The Johnson road crew forem[e]n were, prior to March 30, 2000, aware of the existence of underground facilities beneath New Haven Avenue, and were further aware of their duty to contact the operators of the underground facilities to obtain locates of such facilities, including the depth of the respective facilities.

(7) Johnson negligently breached its duty to NIPSCO by failing to provide it with timely notice of its intent to excavate into New Haven Avenue on March 30, 2000 and/or failing to await performance of a locate as required by DUFA.

(8) As an excavator, Johnson owed NIPSCO a duty under DUFA to plan its excavation to avoid damage to underground facilities, and to maintain a clearance of two feet on either side of its buried service pipe or to at least expose the facility. . . .

(9) Johnson further negligently breached its duty to NIPSCO by failing to expose the underground facilities through hand excavating methods and by excavating blindly through the street with its excavation equipment, thereby striking and damaging the NIPSCO gas service pipe beneath the street.

(10) Johnson's negligent violations of the DUFA proximately caused NIPSCO damages, including loss of natural gas and the cost to repair its damaged service pipe.

. . .

(12) Neither the DUFA nor any other state or federal law or regulation imposed upon NIPSCO or any other utility a duty to maintain underground facilities at a particular depth beneath the surface of the street.

Appellant's App. p. 545–46. Johnson now appeals.

### DISCUSSION AND DECISION

#### I. Standard of Review

 On appeal from the grant or denial of a motion for summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Am. Home Assurance Co. v. Allen*, 814 N.E.2d 662, 666 (Ind.Ct.App.2004). A

party seeking summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Tack's Steel Corp. v. ARC Constr. Co., Inc.*, 821 N.E.2d 883, 888 (Ind.Ct.App.2005). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id.* Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct.App.1999). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind.2002). On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Sizemore v. Erie Ins. Exch.*, 789 N.E.2d 1037, 1038 (Ind.Ct.App.2003). A party appealing from an order granting summary judgment has the burden of persuading us that the decision was erroneous. *Id.* at 1038–39.

█ We also note that specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Bernstein v. Glavin*, 725 N.E.2d 455, 458 (Ind.Ct.App.2000). Rather, a grant of summary judgment may be affirmed upon any theory supported by the designated evidence. *Id.* Finally, the fact that the parties made cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind.Ct.App.2000).

## II. Johnson's Contentions

Johnson claims that summary judgment was erroneously granted to NIPSCO because it was simply following the City's directives in performing the work and acting as the City's employee. Hence, Johnson contends that it was the City's sole responsibility to locate NIPSCO's pipelines. Therefore, Johnson claims that it was not subject to the notice provisions of DUFA when performing the work on the road. Moreover, Johnson argues that DUFA does not apply in this instance because its work at the site should not be considered "excavation" within the meaning of the statute.

Before proceeding to the merits of Johnson's claim, we will set forth the relevant provisions of DUFA. Indiana Code section 8–1–26–14 states that "a person may not excavate real property ... that is served by an underground facility without first ascertaining ... the location of all underground facilities in the area affected by the proposed excavation." And Indiana Code section 8–1–26–16 provides that:

> Before commencing an excavation or demolition operation ... each person responsible for the excavation or demolition must serve written or telephonic notice to excavate or demolish. The notice must be received at least two (2) full working days but not more than twenty (20) calendar days before the commencement of the work.

Another statute, Indiana Code section 8–1–26–20, provides that:

In addition to the notice required in section 16 of this chapter, a person responsible for an excavation or demolition operation under section 14 of this chapter shall do all of the following:

(1) Plan the excavation or demolition to avoid damage to or minimize interference with underground facilities in and near the construction area.

(2) Maintain a clearance between an underground facility, as marked by the operator, and the cutting edge or point of mechanized equipment.

The clearance under subdivision (2) must be not less than two (2) feet on either side of the outer limits of the physical plant. However, if the clearance is less than two (2) feet, exposure of the underground facility may be accomplished only by the use of hand excavation, air cutting, or vacuum excavation.

Indiana Code section 8–1–26–6 defines "excavate" as

an operation for the movement, placement, or removal of earth, rock, or other materials in or on the ground by use of mechanized equipment or by discharge of explosives, including augering, backfilling, digging, ditching, drilling, grading, plowing in, pulling in, ripping, scraping, trenching and tunneling.

Finally, with respect to liability and damages, Indiana Code section 8–1–26–22 provides that

(a) If an operator suffers a pecuniary loss as a result of a violation of this chapter, the operator may bring a civil action against the person who caused the loss for the following:

(1) An amount equal to the operator's actual damage to the facility.

(2) The costs of the action.

(3) A reasonable attorney's fee.

(b) At the court's discretion, a court having jurisdiction may award punitive damages up to three (3) times the operator's actual damage.

■ In addressing Johnson's claim that it cannot be held liable under DUFA because it operated only as an employee or servant of the City, we note that there is no designated evidence that Johnson's relationship with the City on the project was anything other than that of an independent contractor. Among the factors to be considered as to whether an independent contractor status exists are the extent of the contract, the scope of direction, the type of work, skill, or expertise required, the supply of material, equipment, and labor, the length of work, the method of payment, the business of the owner, the parties' intent, and the business of the principal. *Moberly v. Day*, 757 N.E.2d 1007, 1012–13 (Ind.2001).

■ Here, it is apparent that Johnson controlled the method of work and supplied the tools, equipment, and labor necessary to complete the contract on which it successfully bid. Moreover, there is no showing that the City possessed any expertise of building or rebuilding roads. Thus, Johnson has failed to establish that it was performing its work for the City in a capacity other than an independent contractor. In any event, we note that any distinction as to whether Johnson was operating as an employee or an independent contractor is irrelevant in these circumstances. To be sure, Johnson remains liable for its own negligent conduct, regardless of whether the City might have had vicarious exposure for the same negligence. *Gomez v. Adams*, 462 N.E.2d 212, 225 (Ind.Ct.App.1984).

■ In a related issue, Johnson claims that the trial court's grant of summary judgment for NIPSCO was error because it was not performing "excavation work"

within the meaning of DUFA when the incident occurred. Appellant's Br. p. 18. Hence, for this additional reason, Johnson contends that it was under no duty to request a locate for the work it performed on March 30 in accordance with the statutes cited above.

Contrary to Johnson's claim, the designated evidence shows that the mechanized Vermeer saw that Johnson's employee was using ripped through the concrete with a five-inch wide blade, after the asphalt layer had been scraped away. The depth to which the saw blade can be hydraulically deployed is more than eighteen inches. Appellant's App. p. 88, 231–33. The concrete from the road was sawed into sections, and a quantity of rock and sand was being moved—or removed—in the process. At the time of the incident, Mergy was not aware of the depth of the concrete through which the saw was cutting. Nor did he know the specific depths of the other layers of the road that the crew had ground away from the top of the roadbed. Hence, without a locate, Mergy did not know the depth at which the gas line was buried before it was struck by the saw. Appellant's App. p. 186. In our view, these circumstances dictate that when Johnson was performing work as a road contractor ripping through the concrete roadbed with the mechanized saw, it was performing excavation work contemplated by DUFA. As a result, Johnson's claim fails.

### CONCLUSION

To summarize, there is no dispute that Johnson's saw cut NIPSCO's pipe, resulting in damages because Johnson failed to maintain the minimum clearance of two feet between the cutting edge of its mechanized equipment and the underground facilities as defined in DUFA. Inasmuch as the designated evidence established that Johnson failed to obtain the proper locates

prior to performing its excavation work for the City under the contract, we conclude that the trial court properly entered summary judgment for NIPSCO.

The judgment of the trial court is affirmed.

SULLIVAN, J., and MAY, J., concur.

### ORDER

On June 21, 2006, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Motion to Publish Memorandum decision and to Correct Scrivener's Error. The Appellee states that Pursuant to Ind. Appellate Rule 65(B), the Appellee, Northern Indiana Public Service Company moves the court to publish its Memorandum Decision and to correct a scrivener's error contained therein "Inasmuch as the designated evidence established that Johnson failed to obtain the proper locates prior to performing it's excavation work for the city under the contract, we conclude that the trial court properly entered summary judgment for the City." Should read "....for NIPSCO."

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Motion to Publish Memorandum Decision and to Correct Scrivener's Error is GRANTED and this Court's opinion heretofore handed down in this cause on June 21, 2006 marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED, with scrivener's error corrected.