CINERGY CORPORATION, Duke Energy Indiana, Inc., and Duke Energy Ohio, Inc., Appellants–Defendants,

v.

ST. PAUL SURPLUS LINES INSURANCE COMPANY; Century Indemnity Insurance Company; First State Insurance; Associated Electric & Gas Insurance Services Limited; Continental Insurance Company; Certain Underwriters at Lloyds, London; Lexington Insurance Company, Insurance Company of the State of Pennsylvania and National Union First Insurance Company of Pittsburgh, Pennsylvania; Transamerica Premier; TIG Insurance Company; and Republic Insurance Company, Appellees–Plaintiffs.

No. 32A01–0605–CV–218.

Court of Appeals of Indiana.

Sept. 5, 2007.

George M. Plews, Peter M. Racher, Donna C. Marron, John M. Ketcham,

Plews Shadley Racher & Braun, Indianapolis, IN, Attorneys for Appellants.

Jan M. Michaels, Steven Schulwolf, Michaels & May, P.C., Chicago, IL, Bryce H. Bennett, James O. Giffin, Riley Bennett & Egloff, LLP, Indianapolis, IN, Charles W. Browning, Kenneth C. Newa, Plunkett & Cooney, P.C., Bloomfield Hills, MI, Attorneys for Appellee St. Paul Surplus Lines Insurance Company.

Bruce Kamplain, Scott A. Harkness, Norris, Choplin & Schroeder, LLP, Indianapolis, IN, Michael R. Orlando, Cohn Baughman & Martin, Chicago, IL, Attorneys for Appellee Century Indemnity Insurance Company.

Steven S. Lovern, Law Office of Steven S. Lovern, Indianapolis, IN, Steven R. Apel, Karbal, Cohen, Economou, Silk & Dunne, Chicago, IL, Attorneys for Appellee First State Insurance.

Richard A. Smikle, Brian J. Paul, Ice Miller LLP, Indianapolis, IN, Howard B. Epstein, Theodore A. Keyes, Sami B. Groff, Valerie L. Sheaffer, Schulte Roth & Zabel, LLP, New York City, NY, Attorneys for Appellee Associated Electric & Gas Insurance Services Limited.

Bruce L. Kamplain, Scott A. Harkness, Norris Choplin & Schroeder, LLP, Indianapolis, IN, Attorneys for Appellee Continental Insurance Company.

Laura S. Reed, Jeffrey B. Fecht, Riley Bennett & Egloff, LLP, Indianapolis, IN, Attorneys for Appellee Certain Underwriters at Lloyds, London.

John C. Trimble, Sonia C. Das, Lewis Wagner, LLP, Ilene M. Korey, Clausen Miller P.C., Chicago, IL, Attorneys for Appellee Lexington Insurance Company, Insurance Company of the State of Pennsylvania and National Union First Insurance Company of Pittsburgh, Pennsylvania.

Richard H. Riegner, Stewart & Irwin, P.C., Indianapolis, IN, Attorney for Appellee Transamerica Premier.

Bradford S. Moyer, Kelley, Casey & Moyer, P.C., Kalamazoo, MI, Attorney for Appellee Tig Insurance Company.

David A. Temple, Drewry Simmons Vornehm, LLP, Indianapolis, IN, Attorney for Appellee Republic Insurance Company.

## OPINION

ROBB, Judge.

### Case Summary and Issue[1]

Cinergy Corporation, Duke Energy Indiana, Inc., and Duke Energy Ohio, Inc. (collectively referred to as "Cinergy"),[2] appeal from the trial court's order granting partial summary judgment to St. Paul Surplus Lines Insurance Company ("St. Paul"), Century Indemnity Company ("Century"), First State Insurance Company ("First State"), and Royal Indemnity Company ("Royal") (collectively referred to as the "Insurers"). Cinergy was sued in federal court for alleged violations of the

1. Pursuant to Appellate Rule 17(A), all parties of record in the trial court are parties on appeal. However, St. Paul has filed the only appellee's brief, in which Century and First State, on behalf of itself and Royal Indemnity policy No. REC 102010, have joined. First State, on behalf of itself and the Royal Indemnity policy, has also joined in St. Paul's supplemental appellee's brief.

2. When this case was initiated, the caption listed Cinergy Corp., PSI Energy, Inc.

("PSI"), and the Cincinnati Gas & Electric Company ("CGE") as Appellants/Defendants. On October 26, 2006, the Appellants/Defendants filed a Notice of Name Change informing this court that the name of PSI had changed to Duke Energy Indiana, Inc., and the name of CGE had changed to Duke Energy Ohio, Inc. We accepted the notice and will refer to the parties by their new names except when required for context.

Clean Air Act at, *inter alia,* a power plant in Cayuga, Indiana, in 1984 (the "underlying lawsuit"). The Insurers, through which Cinergy carried excess insurance policies on the Cayuga plant during the relevant time period, filed a declaratory judgment action in Hendricks Superior Court against Cinergy seeking a declaration that they owe no coverage for Cinergy's liabilities in the underlying lawsuit. When the claim regarding the alleged 1984 violations at the Cayuga plant was dismissed from the underlying lawsuit, the Insurers moved for and were granted partial summary judgment with respect to the Cayuga plant in the declaratory judgment action. Cinergy raises one issue for our review: whether the Insurers, under the terms of their policies, are required to contribute to Cinergy's defense costs.[3] Concluding that, pursuant to *Cinergy Corp. v. Associated Elec. & Gas Ins. Servs., Ltd.,* 865 N.E.2d 571 (Ind.2007), there was no occurrence triggering the policies' coverage provisions, we affirm the trial court's entry of partial summary judgment for the Insurers.

*Facts and Procedural History* [4]

In 1983–84, PSI, an Indiana corporation owning and operating four Indiana power plants, was covered by policies of excess insurance issued by the Insurers.[5] In 1984, PSI replaced an economizer[6] at its Cayuga, Indiana, plant without also installing certain air-emission containment equipment. Effective October 24, 1994, PSI became a subsidiary of Cinergy Corporation, a public utility holding company, and, as noted above, eventually became Duke Energy Indiana, Inc.

In November 1999, the underlying lawsuit was initiated when Cinergy was sued by the United States, three states, and two environmental organizations for alleged violations of the Clean Air Act. The complaint, filed in federal court, alleges that after certain maintenance and repair projects at six Cinergy power plants, including the Cayuga plant, Cinergy resumed operations without installing additional air emissions containment equipment, thereby causing increased emissions of harmful substances into the air. The underlying lawsuit seeks injunctive relief and assessment of civil penalties.[7] As of June 21, 2005, Cinergy had incurred over $24 million in defense costs with respect to the underlying lawsuit.

In October 2000, the Insurers initiated the instant declaratory judgment action

---

3. Cinergy has filed a Motion to Strike Part or All of the Appellees' Brief, alleging that the brief improperly cites to trial court decisions, includes argument in its statement of the case and statement of facts, lacks appropriate citations to the record, refers to extraneous evidence, and is not supported by cogent reasoning. St. Paul has filed a Response, in which the other insurers have joined, contending that there is nothing improper about their brief, and even if there is, striking the entire brief would be an inappropriate sanction. Having reviewed the motion, the response, and the brief in question, we hereby deny Cinergy's Motion to Strike.

4. We heard oral argument in Indianapolis, Indiana, on May 1, 2007.

5. St. Paul's policy covered liability claims from $0.5 million to $10.5 million; Royal's policy covered liability claims from $10.5 million to $25.5 million; and Century/First State's policies both covered liability claims from $30.5 to $40.5 million. St. Paul's policy terms define the shared coverage obligations of the Insurers, with the other policies incorporating the terms of the St. Paul policy. Therefore, it is the terms of the St. Paul policy that are at issue here. Cinergy was self-insured as to liability up to $0.5 million.

6. According to Cinergy, an "economizer" is "a double-walled container that facilitates heat transfer." Appellants' Brief at 2.

7. The exact nature of the underlying lawsuit will be discussed in more detail below.

regarding their coverage obligations.[8] On June 21, 2005, the plaintiffs in the underlying lawsuit withdrew their claim against Cinergy regarding the 1984 modifications to the Cayuga· plant and dismissed that claim with prejudice.[9] The Insurers then moved for partial summary judgment in this case as to the 1984 Cayuga modification. The trial court granted the Insurers' motion for partial summary judgment:

> In its Amended Complaint in this action, [St. Paul] seeks a declaration that it owes no coverage for [Cinergy's] liabilities for alleged violation of the Clean Air Act for operations related to [several] sites. On August 27, 2005, St. Paul filed "St. Paul's Motion for Partial Summary Judgment Under [1983–84] Policy ... for the Cayuga Plant." [Century] and [First State], for itself and also on behalf of [Royal], joined in St. Paul's motion.

> Oral argument having been heard and the Court, being duly advised, orders, adjudges and decrees as follows:

> There is no genuine issue of material fact, no just reason for delay and [the Insurers] are entitled to summary judgment in their favor as a matter of law.

Accordingly, summary judgment is hereby GRANTED with prejudice and entered in favor of the [Insurers] ... because [Cinergy has] failed to demonstrate that there was a potential "occurrence" during the 1983–84 policy term at the Cayuga Plant. Therefore, [the Insurers' policies] do not provide any insurance coverage for [Cinergy's] alleged liability at any site at issue in this action, including any fines or penalties as a result of the [underlying lawsuit] or any related action concerning [Cinergy's] alleged violations of the Clean Air Act. This order and the Court's prior order of May 22, 2003 hereby dismiss all of [Cinergy's] claims for coverage under [the policies].

Appellants' Appendix at 78–79. Cinergy now appeals the trial court's order.[10]

### *Discussion and Decision*

#### I. Summary Judgment Standard of Review

Relying on specifically designated evidence, the moving party bears the burden of making a prima facie showing that there

---

8. Prior proceedings in the instant case have resulted in several appeals to Indiana appellate courts. *See Cinergy Corp. v. St. Paul Surplus Lines Ins. Co.*, No. 32A01–0309–CV– 327, 810 N.E.2d 786 (Ind.Ct.App., May 25, 2004) (affirming trial court's grant of partial summary judgment to the Insurers determining that the 1983–84 polices at issue did not cover any claims asserted against Cinergy in the underlying lawsuit except possibly the claim relating to the 1984 Cayuga modification); *Cinergy Corp. v. St. Paul Surplus Lines Ins. Co.*, 785 N.E.2d 586 (Ind.Ct.App.2003), *trans. denied* (affirming two trial court determinations that Hendricks County, not Marion County, should adjudicate this dispute).

9. The underlying lawsuit continues as to claims regarding other modifications at the Cayuga plant, as well as claims regarding other Cinergy plants. Only the 1984 Cayuga modification fell within the period PSI was insured by St. Paul, however, and is the only claim at issue herein.

10. The order was originally entered on March 16, 2006. On May 10, 2006, Cinergy filed a "Motion to Amend the Court's Partial Summary Judgment Order of March 16, 2006." Cinergy alleged that the March 16, 2006, order was not mailed to any of Cinergy's counsel and that it was unaware of the entry of the order until April 27, 2006. Cinergy sought a new order that differed from the March 16, 2006, order "only in·that it supersedes the March 16 Order and has a current date." Appellants' App. at 616. Over the Insurers' objection, the trial court granted the motion and re-issued its summary judgment order, identical in all respects to the March 16 order except now dated May 31, 2006. *Id.* at 84– 85. Cinergy initiated a timely appeal from the May 31 order.

are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Prairie Material Sales, Inc. v. Lake County Council*, 855 N.E.2d 372, 376 (Ind.Ct.App.2006), *trans. denied.* Once the moving party satisfies this burden, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *S.E. Johnson Cos., Inc. v. N. Indiana Pub. Serv. Co.*, 852 N.E.2d 1, 5 (Ind.Ct.App. 2006), *trans. denied.* We must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. Id. On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Sizemore v. Erie Ins. Exch.*, 789 N.E.2d 1037, 1038 (Ind.Ct. App.2003). A party appealing from an order granting summary judgment has the burden of persuading us that the decision was erroneous. *Id.* at 1038–39. Finally, we may affirm a grant of summary judgment upon any theory supported by the designated materials. *Prairie Material Sales, Inc.*, 855 N.E.2d at 376.

■■■ Insurance contracts are subject to the same rules of construction as are other contracts. *Jackson v. Jones*, 804 N.E.2d 155, 158 (Ind.Ct.App.2004). Generally, the construction of a written contract is a question of law for the trial court for which summary judgment is particularly appropriate. *Mid State Bank v. 84 Lumber Co.*, 629 N.E.2d 909, 914 (Ind.Ct. App.1994). However, if the terms of a written contract are ambiguous, it is the responsibility of the trier-of-fact to ascertain the facts necessary to construe the contract. *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 687 (Ind.Ct.App. 2006). Consequently, when a summary judgment ruling is based upon the con-

struction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or that the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Id.*

## II. The Insurance Policy

The parties' dispute centers on the following language from the St. Paul policy:

### INSURING AGREEMENTS

### I. COVERAGE:

This policy is to indemnify the named Insured and/or the Insureds as defined in the definitions for any and all sums which they shall be legally obligated to pay and shall pay or by final judgment be adjudged to pay (subject to the terms, conditions and exclusions hereinafter mentioned) to any person or persons as damages for personal injuries sustained including death at any time resulting therefrom or by reason of damage to or destruction of property, by reason of or resulting from any trade or business of the named Insured including the performance of services by or on behalf of such Insured in connection with said trade or business.

\* \* \*

### II. LIMIT OF LIABILITY:

It is understood and agreed that the Company shall only be liable hereunder for ultimate net loss as a result of any occurrence covered under Insuring Agreement I which is in excess of the Primary Limit stated in Item 4 above, and then only up to the Limit of Liability stated in Item 3 above. It is understood, however, that there is no limit to the number of occurrences for which claims may be made hereunder.

\* \* \*

### DEFINITIONS

\* \* \*

### 2. OCCURRENCE:

The word "Occurrence" shall be understood to mean "one happening or series of happenings arising out of or caused by one event taking place during the term of this contract."

\* \* \*

### 6. ULTIMATE NET LOSS:

The words "Ultimate Net Loss" shall be understood to mean the amount payable in settlement of the liability of the Insured after making deductions for all recoveries and for other valid and collectible insurances excepting however the policies of the primary insurers and shall exclude all expenses and costs.

### 7. COSTS:

The word "Costs" shall be understood to mean interest accruing after entry of judgment, investigation, adjustment and legal expenses....

### CONDITIONS

\* \* \*

### B. SETTLEMENT OF CLAIMS AND APPORTIONMENT OF COSTS:

In the event of any claim or claims arising out of any occurrence appearing likely to exceed the amounts of which this policy pays the excess, no law costs shall be incurred, without the prior consent of the Company or its representatives. After an occurrence the Insured may without prejudice as to liability proceed immediately with settlement not exceeding in the aggregate the amounts of which this policy pays the excess but shall at the earliest practicable moment after the occurrence advise the representatives of the Company of the occurrence, the adjustments so far made, and agree with said representatives upon further settlements or legal proceedings.

Should the claim or claims become adjustable under the terms of insuring agreement I previous to going into court for a sum of not more than the amounts of which this policy pays the excess, then no law costs shall be payable by the Company. Should, however, the sum for which the said claim or claims may be so adjustable exceed the amounts of which this policy pays the excess on account of any occurrence then Company, if they or their representatives consent to the proceedings continuing, shall contribute to the costs in the ratio that their proportion of the liability for such claim or claims as finally adjusted bears to the whole amount of such claim or claims.

Appellants' App. at 210–14. In particular, the parties dispute whether the provision titled "Settlement of Claims and Apportionment of Costs" ("Condition B") requires St. Paul to contribute to Cinergy's defense costs for the underlying lawsuit.[11]

### III. Construction of Insurance Contract

 The trial court found that the Insurers were entitled to summary judgment because there was no "occurrence" during the policy term and therefore there was no coverage under the policy, including defense costs. Cinergy claims that Condition B[12] obligates contribution to defense costs for even potentially covered claims if three conditions are met: 1) the claim is adjusta-

---

11. The policy does not impose a separate duty to defend. *See Great Lakes Chem. Corp. v. Int'l Surplus Lines Ins. Co.,* 638 N.E.2d 847, 852 (Ind.Ct.App.1994) ("An insurer's duty to defend, being contractual, is determined by the language in the policies.").

12. All parties agree that the policy excludes defense costs from the definition of "ultimate net loss" for purposes of the limit of liability, leaving Condition B as the only possible avenue by which Cinergy could recover defense costs under this policy.

ble; 2) the sum for which the claim may be adjusted exceeds the coverage limit; and 3) the Insurers consented to the proceedings continuing. Cinergy contends that it has met each of these three conditions and is therefore entitled to recover defense costs because until the 1984 Cayuga claim was dismissed with prejudice from the. underlying lawsuit, it was a potentially covered claim that Cinergy had to defend. Cinergy contends the claim was "adjustable" because it was not obviously outside the risk covered by the policy. Moreover, Cinergy claims the Insurers acknowledged the claim was adjustable when they moved in 2002 for summary judgment on all claims *except* the 1984 Cayuga modification claim. Cinergy contends that it proved the sum for which the claim may be adjustable exceeds the coverage limit by designating evidence that a settlement was considered in the underlying lawsuit by which all claims, including the 1984 Cayuga modification claim, would have been settled for approximately $670 million, and that the Cayuga claim carried a "greater than average liability risk" because the plaintiffs alleged additional violations of the Clean Air Act at that location.[13] Appellants' App. at 433–34. Finally, Cinergy asserts that the Insurers consented to the proceedings continuing when they did not make an offer of· assistance or guidance after Cinergy advised them of the possible settlement.

The Insurers dispute Cinergy's three-part test for determining when they must contribute to defense costs, claiming that Cinergy has "creat[ed] artificial 'conditions' for the application of Condition B...." Brief of Appellee at 15. They counter Cinergy's argument by asserting that Condition B comes into play only if: 1) there is a covered claim arising out of an occurrence; and 2) Cinergy becomes liable for an amount that when fully adjusted reaches the policy limits. The Insurers contend that, with the dismissal of the 1984 Cayuga modification claim from the underlying lawsuit, Cinergy was not liable for an occurrence taking place during the policy term and Cinergy's claims that were potentially covered were finally adjusted for $0.00; therefore, Condition B does not require it to contribute its proportionate share of defense costs.[14]

On May 1, 2007, the day we held oral argument in this case, our supreme court handed down its decision in *Cinergy Corp. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 865 N.E.2d 571 (Ind.2007). That case has its origins in the same underlying lawsuit as this case. Associated Electric & Gas Insurance Services Limited ("AEGIS"), along with twenty-two other insurance companies, filed a declaratory judgment against Cinergy seeking to determine the extent of its insurance obligations with respect to the underlying lawsuit. Cinergy filed a motion for partial summary judgment seeking payment of defense costs already incurred in the underlying lawsuit, pre-judgment interest, and an order di-

**13.** The $670 million settlement offer was to settle all thirty-four claims asserted against Cinergy. Cinergy posits in its brief that dividing the $670 million settlement proposal by the thirty-four initial claims yields a figure of $19.7 million per claim, a figure above both St. Paul and Royal's underlying coverage. However, Cinergy designated no evidence showing that the settlement would be applied evenly to each claim, nor did it designate evidence showing the specific amount of the settlement that would be attributable to the 1984 Cayuga modification claim.

**14.** Because we hold that there was no occurrence triggering the policies' coverage provisions, we do not address the parties' arguments regarding the interpretation of "the whole amount of such claim or claims" for the purpose of determining the amount of the Insurers' proportionate liability for costs.

recting AEGIS to pay, as incurred, future defense costs. The trial court denied the motion. On appeal, Cinergy contended that the insurance policy provisions required AEGIS to pay defense costs as a matter of law; AEGIS contended that its policies did not provide coverage for the claims made against Cinergy and it therefore had no duty to pay defense costs. The court determined that the policies at issue imposed the following obligation:

> After the self-insured retention amounts specified in the policies are satisfied, AEGIS is responsible for expenses incurred by the power companies in the investigation, negotiation, settlement, and defense of any claim or suit seeking damages because of or resulting in bodily injury or property damage with respect to any accident, event, or continuous or repeated exposure to conditions.

*Id.* at 576–77. The court described the "essential controversy" as whether the federal lawsuit seeks damages because of bodily injury or property damage with respect to any accident, event, or continuous or repeated exposure to conditions. *Id.* at 577. The court thus examined the complaint in the underlying lawsuit. After noting that the parties essentially agree that the "primary thrust" of the federal lawsuit is to require the power companies to incur the costs of installing certain government-mandated equipment intended to reduce future emissions of pollutants and prevent future environmental harm, the court concluded that the federal lawsuit "is directed at preventing future public harm, not at obtaining control, mitigation, or compensation for past or existing environmentally hazardous emissions." *Id.* at 580.

The court then considered the disputed policies, which conditioned the insurer's responsibilities for "ultimate net loss" on the requirement that the loss be for damages "because of bodily injury or property damage '*caused by* an OCCURRENCE.'" *Id.* at 582 (emphasis in original). An "occurrence" was defined by the policy as "an accident, event, or continuous or repeated exposure to conditions." *Id.*

> The clear and unmistakable import of the phrase "caused by" is that the accident, event, or exposure to conditions must have preceded the damages claimed—here, the costs of installing emission control equipment.

> But what the power companies here claim to be covered, the installation costs for equipment to prevent future emissions, is not caused by the *happening* of an accident, event, or exposure to conditions but rather result from the *prevention* of such an occurrence. We cannot read the policy requirement that covered damages result from the happening of an occurrence to mean that coverage extends to damages that result from the prevention of an occurrence.

*Id.* (emphasis in original). Because the policies do not provide coverage for the costs of installing equipment to reduce future omissions of pollutants and to prevent resulting future environmental harm, which was the primary objective of the underlying lawsuit, the court held that the trial court did not err in denying partial summary judgment to Cinergy.[15]

Because of the potential impact of the supreme court decision on this case, we allowed the parties to submit supplemental briefs addressing the supreme court opinion. Cinergy contends that because the

---

**15.** The court did note that Cinergy's motion for partial summary judgment seeking an order requiring the insurer to pay all defense costs as incurred was not limited to seeking costs incurred only in the defense of any federal claims seeking damages unrelated to equipment installation intended to reduce future emissions. *Id.* at 583.

supreme court opinion arose in a different procedural posture and addresses different policy language, it is not controlling here. Specifically, Cinergy notes that the supreme court was reviewing the denial of Cinergy's motion for partial summary judgment seeking an order of payment of costs, whereas we are reviewing the grant of the Insurers' motion for summary judgment seeking an order that no costs are payable. Cinergy also contends that because the supreme court opinion leaves open the possibility that some of Cinergy's defense costs are covered by the insurer when the opinion notes that Cinergy made no argument addressing the apportionment of defense costs in the event some federal claims seek relief in the form of damages covered by the policies, the trial court's order in this case precluding any defense cost obligation is inconsistent with the supreme court's opinion. Finally, Cinergy contends that the supreme court's acknowledgment that the insurer had a separate obligation to pay defense costs regardless of whether the federal plaintiffs ultimately succeeded counters the Insurers' argument that because no damages were paid in the underlying action, they have no defense cost obligation.

The Insurers also note that the supreme court was considering different policy language and contend that is the critical difference between the supreme court case and this one. Specifically, the Insurers note that the AEGIS policy defined "ultimate net loss" to include damages *and* costs, whereas these policies specifically exclude costs from the definition of "ultimate net loss." Moreover, the Insurers note that the AEGIS policy imposed on the insurer the obligation to pay all sums that the insured becomes legally obligated to pay *in addition to* all expenses incurred by the insured, whereas these policies tie reimbursement of a portion of costs to liability for the claim. The Insurers assert that

these differences, coupled with the supreme court's determination regarding the nature of the underlying claims, supports the trial court's entry of summary judgment in their favor.

■ We are compelled to agree with the Insurers. We are bound by the supreme court's interpretation of the federal complaint underlying this lawsuit. The supreme court, examining the exact same complaint on which this case is based, determined that the complaint "is directed at preventing future public harm, not at obtaining control, mitigation, or compensation for past or existing environmentally hazardous emissions." 865 N.E.2d at 582. The policy at issue herein provides that it indemnifies Cinergy for:

> any and all sums which they shall be legally obligated to pay and shall pay or by final judgment be adjudged to pay (subject to the terms, conditions and exclusions hereinafter mentioned) to any person or persons as damages for personal injuries sustained including death at any time resulting therefrom or by reason of damage to or destruction of property, by reason of or resulting from any trade or business of the named Insured including the performance of services by or on behalf of such Insured in connection with said trade or business.

Appellants' App. at 210. In addition, the Insurers "shall only be liable … for ultimate net loss as a result of any occurrence covered" under the agreement. *Id.* at 211. "Ultimate net loss" is defined as "the amount payable in settlement of the liability of the Insured after making deductions for all recoveries and for other valid and collectible insurances … and shall exclude all expenses and costs." *Id.* at 213. "Occurrence" is defined as "one happening or series of happenings arising out of or caused by one event taking place during

the term of this contract." *Id.* at 212. "Costs" are defined to include legal expenses. *Id.* at 213. The Insurers agreement to contribute to law costs in the event of a settlement is found in "Condition B," which states first that "[i]n the event of any *claim or claims arising out of an occurrence,*" no law costs shall be incurred without the prior consent of the Insurers. *Id.* at 214 (emphasis added). Condition B also states that should the sum for which said claim or claims "may be so adjustable exceed the amounts of which this policy pays the excess on *account of any occurrence,*" then the Insurer shall contribute to the costs "in the ratio that their proportion of the liability for such claim or claims as finally adjusted bears to the whole amount of such claim or claims." *Id.* (emphasis added).

█ Thus, in order for the Insurers to bear any responsibility for payment of costs, there must first be a claim or claims arising out of an occurrence. The insurance contract provides that the Insurers are liable for personal injury or property damage caused by an event taking place during the policy period. As the supreme court stated, "the installation costs for equipment to prevent future emissions . . . is not caused by the *happening* of an . . . event . . . but rather result from the *prevention* of such an occurrence." 865 N.E.2d at 582 (emphasis in original). The preventive measures the underlying lawsuit seeks were not "caused by" the event in question. Thus, Cinergy's arguments in this appeal are to no avail; not only was there no actual occurrence bringing the claims against Cinergy within the terms of the policies, but also there was never a potential occurrence under the terms of the policies. The trial court properly found that there was no occurrence during the relevant policy term, and the Insurers were entitled to judgment as a matter of law that they are not responsible for contributing to Cinergy's defense costs.[16]

### Conclusion

The trial court properly granted partial summary judgment to the Insurers with respect to the 1984 Cayuga modification claim. The judgment of the trial court is affirmed.

Affirmed.

BAKER, C.J., and DARDEN, J., concur.

█

---

**16.** Cinergy claims that it would be unfair for the Insurers not to contribute to defense costs because from the time the underlying lawsuit was initiated until June 21, 2005, when the 1984 Cayuga modification claim was dismissed, there was a potential for coverage. As we have noted, because of the nature of the relief sought by the underlying lawsuit and the absence of a duty to defend clause in these policies, there was no potential coverage. Cinergy accepted the contract including the absence of a duty to defend clause, and as a result, traded the right to receive contribution for potentially covered claims in exchange for the right to manage its own defense and be reimbursed for costs only upon determination of coverage. *See Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.,* 73 F.3d 1178, 1219 (2d Cir.1995) (holding that under the policies at issue, which contained a duty to reimburse defense costs but not a duty to defend, the insurers had a duty to reimburse costs for claims that are established to be covered through judgment and settlement, but not for claims only potentially falling within the policy's coverage: "[t]he policies do not contemplate unconditional payment of defense costs for potentially covered claims, but only payment of costs if indemnification is required.").