## Omega Flex, Inc. *vs.* Pacific Employers Insurance Company.

No. 09-P-628.

Suffolk. January 7, 2010. - November 16, 2010.

Present: Rapoza, C.J., Berry, & Wolohojian, JJ.

*Insurance,* Insurer's obligation to defend. *Indemnity. Contract,* Insurance, Indemnity.

In a civil action in which the plaintiff sought, under a commercial general liability insurance policy issued by the defendant insurer, reimbursement of costs incurred in defending against a nationwide class action, the judge erred in granting judgment on the pleadings in favor of the insurer, where the allegations of the complaint in the underlying class action sufficiently alleged loss of the type covered by the policy, thus triggering the insurer's duty to defend [265-268]; moreover, the policy's deductible endorsement did not support the insurer's position that its duty to pay defense costs was limited to actions in which it had a duty to pay damages, but rather obligated the insurer to pay damages and defense costs once they exceeded the deductible amount [268-270].

Civil action commenced in the Superior Court Department on May 1, 2007.

The case was heard by *Ralph D. Gants,* J., on motions for partial judgment on the pleadings, and a motion for judgment on the pleadings on the remaining claims was considered by him.

*Helen K. Michael,* of the District of Columbia (*Kevin C. Maynard* with her) for the plaintiff.

*Gregory P. Deschenes* (*Kurt M. Mullen* with him) for the defendant.

Wolohojian, J. Omega Flex, Inc. (Omega), appeals from the partial judgment on the pleadings and final judgment entered in favor of its insurer, Pacific Employers Insurance Company (Pacific), on Omega's claim under its insurance policy for reimbursement of costs incurred in defending against a nationwide

class action. A Superior Court judge ruled that the complaint in the underlying class action failed to allege damages that would be covered by the Pacific policy, and therefore that the insurer had no duty to defend. We read the class action complaint as posing the potential of recovery for fire damage to some class members' property, thereby triggering Pacific's duty to defend. For that reason, we vacate the judgment.

*Background.* Omega was sued in 2004, one of several defendants in a nationwide class action.[1] Since 1997, Omega has manufactured and sold a corrugated stainless steel tubing (CSST) that was installed in floors, walls, and attics of residential, commercial, and industrial properties to transmit gas to gas-fueled appliances. The plaintiffs in the putative class action were owners of real property or structures in which CSST had been installed, and alleged that "CSST was designed, manufactured, marketed, sold, distributed, and/or placed into the stream of commerce without sufficient thickness to protect against combustion after a lightning strike." The plaintiffs sought damages to provide protection from the alleged defect, as well as to provide notice to class members whose properties already had been damaged so that they could seek additional payment for their loss. Specifically, the amended complaint included the following in the prayer for relief:

> "c) . . . award an amount equal to the cost to install lightning strike protection and insulation to stop lightning strikes from contacting the premises and/or install appropriate grounding of the pipes, thereby preventing the CSST piping from causing fires . . . ;

> "d) Awarding such equitable relief permitted, including

---

[1] The plaintiffs in the underlying class action filed their complaint in November, 2004, and filed their first amended complaint in December, 2004. In September, 2006, a second amended complaint was filed, which added a claim that the installation of the product that was the subject of the class action into the plaintiffs' premises, in and of itself, constituted property damage. Omega does not argue on appeal that the new allegation in the second amended complaint triggered Pacific's duty to defend, and we do not address the point. Instead, Omega claims coverage for the claims asserted in the first amended complaint, and for purposes of this appeal, we limit our discussion to the first amended complaint filed in the underlying class action, referring to it henceforth as the amended complaint.

an injunction requiring Defendants to notify all Class Members that they are entitled to submit an additional or supplemental request for payment in connection with their prior loss and/or damage to their structure and/or premises . . . ."

Omega was insured under a Pacific commercial general liability policy issued for October 1, 2001, through October 1, 2002. Subject to a $500,000 deductible,[2] the Pacific policy provided coverage as follows:

"We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

Generally speaking, and subject to certain exclusions we need not address,[3] the Pacific policy provided coverage for product liability claims when the insured's product accidentally damaged the property of a third party. Property damage was defined in the policy, in relevant part, as "[p]hysical injury to tangible property, including all resulting loss of use of that property," and was covered by the policy when the property damage was caused by an occurrence, defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[4]

---

[2]The deductible endorsement also provided that Omega had contracted with a third-party claims handler to investigate, defend, and settle claims arising under the policy. For purposes of this appeal, the parties agree that Omega's contract with a third-party claims handler meant that Pacific was not required to provide the actual defense for applicable claims, but was required to reimburse Omega for its defense costs under certain conditions, about which the parties do not agree.

[3]Pacific devoted portions of its brief to arguments relating to the business risk exclusion and impaired property exclusions. Pacific acknowledged at oral argument, however, that these exclusions are not implicated because Omega's appeal centers only on whether the underlying complaint involved allegations of prior fire damage.

[4]It is undisputed that the policy did not cover the loss of value to the class

In March 2005, Omega notified Pacific of the amended complaint. On December 9, 2005, Pacific denied that it had any obligation to defend or indemnify. The following year, Omega reached a class-wide settlement with the named plaintiffs. A final order and judgment dated February 1, 2007, certified the class for settlement purposes, awarded class counsel attorney's fees, and dismissed the action with prejudice. Omega was required to pay a proportionate share of class counsel attorney's fees in the amount of approximately $10,200,000, as well as a share of costs for notices and for vouchers for class members to install lightning and grounding protection.

Omega filed this action against Pacific in May 2007, due to Pacific's refusal to reimburse defense costs incurred in the underlying class action. Omega claimed that Pacific was obligated to pay Omega's defense costs because the allegations of the underlying amended complaint created the potential that Omega could be found liable for fire damage caused by lightning strikes. In ruling on the parties' cross-motions for partial judgment on the pleadings, the judge observed that there was no allegation of any lightning strikes or fires having occurred at the class action plaintiffs' premises in the underlying amended complaint, and therefore the duty to defend was not triggered. The judge subsequently allowed Pacific's motion for judgment on Omega's remaining claims, and final judgment was entered in Pacific's favor. Omega filed this appeal.

*Discussion.* 1. *Potential for loss covered by the policy.* Omega maintains that the judge erred in ruling that the allegations of the underlying amended complaint did not give rise to Pacific's duty to defend. "It is settled in this jurisdiction, and generally elsewhere, that the question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318 (1983), *S.C.*, 20 Mass. App. Ct. 215 (1985). "The process is not

members' premises due to the presence of CSST, nor the cost to prevent the possibility of future fires that CSST allegedly posed.

one of looking at the legal theory enunciated by the pleader but of 'envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.' " *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 12-13 (1989), quoting from *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 147 (1984). In so doing, the insurer may not consider the merits of the claim as a basis for refusing to defend. *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, *supra* at 13. The underlying complaint need only state a claim that gives rise to a possibility of recovery under the policy, rather than a probability of such recovery. *Simplex Technologies, Inc.* v. *Liberty Mut. Ins. Co.*, 429 Mass. 196, 199 (1999).

Our task is to apply these principles to the allegations of the amended class action complaint. As noted above, the amended complaint alleged that the putative class members' premises contained CSST made by Omega that posed a risk of fire. The amended complaint did not explicitly allege that fires already had occurred; it alleged only a risk of fire causally connected to CSST's presence. Read narrowly and taken alone, these allegations would not bring the claims within the scope of the policy.[5] However, the process of "envisaging what kinds of losses may be proved as lying within the range of the allegations" is not restricted to consideration of the factual allegations of the complaint, but rather requires us to look at the entire complaint, including the prayer for relief, in order to determine whether the allegations are " 'reasonably susceptible' of stating a claim that would fall within the zone of covered injuries." *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, *supra* at 12, quoting from *Vappi & Co.* v. *Aetna Cas. & Sur. Co.*, 348 Mass. 427, 431 (1965).

Despite the absence of a specific factual allegation that class members' premises had already been damaged, prayer (d) of the amended complaint sought specific and special relief for class

[5]Omega concedes that the claim to recover the cost of preventing fire damage from future lightning strikes was not a claim for property damage within the meaning of the policy, and so did not implicate Pacific's duty to pay defense costs.

members who had already suffered actual damage to their premises. Those class members were to be permitted to seek "payment in connection with their prior loss and/or damage to their structures and/or premises" by CSST, provided the amount did not exceed $75,000 for each class member. We do not believe that the amended complaint can be read, for purposes of assessing the duty to defend, without taking this prayer into consideration. Taking it into account, the amended complaint sufficiently alleges loss of the type covered by the policy.

It is true that prayer (d) is phrased as a request for equitable relief in that it requests an order requiring Omega to notify class members that they can seek to recover for actual loss or damage to their structures. It is also true that injunctive relief alone is not "damages" within the scope of coverage. See *116 Commonwealth Condominium Trust* v. *Aetna Cas. & Sur. Co.*, 433 Mass. 373, 377 (2001) ("Our cases are clear that 'damages' is the word that expresses in dollars and cents the plaintiff's injury"). However, injunctive relief that requires the insured to incur costs to remedy covered losses is "damages" within the scope of the policy. *Hazen Paper Co.* v. *United States Fiduciary & Guar. Co.*, 407 Mass. 689, 698-700 (1990). Such is the case here; prayer (d) sought an order requiring Omega to notify class members that they would be entitled to recover up to $75,000 for actual damage to their structures caused by CSST.

The fact that this is a class action complaint does not change our analysis. To be sure, the plaintiffs ultimately would need to satisfy the requirements of Mass.R.Civ.P. 23, 365 Mass. 767 (1974).[6] See generally *Spear* v. *H.V. Greene Co.*, 246 Mass. 259, 267 (1923) (to be joined as a class, the plaintiffs must

---

[6]Rule 23(a) provides: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Rule 23(b) provides: "An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

show "[t]hey are affected in the same way by the acts of the defendants, and seek the same remedy against them"); *Salvas* v. *Wal-Mart Stores, Inc.*, 452 Mass. 337, 362-364 (2008), quoting from *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 623 (1997) (certification turns on whether the plaintiffs' claims are "sufficiently cohesive to warrant adjudication by representation"). That said, we do not believe that an insured must demonstrate that the plaintiffs will satisfy rule 23 in order to receive a defense from its insurer. Just as in any other type of action, the insurer's duty to defend is determined by looking to the face of the complaint. See *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. at 324. In the context of a class action complaint, we understand that principle to mean that we should avoid anticipating the possible outcome of the certification process. See, e.g., *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. 677, 682 (1964) ("Nevertheless, even if the proof would ultimately relieve [the insurer] from liability to indemnify [the insured] against the judgment, [the insurer] would still be bound to defend the action"); *Hartford Acc. & Indem. Co.* v. *Beaver*, 466 F.3d 1289, 1295 (11th Cir. 2006) ("the duty to defend is not defeated by some uncertainty as to the merits of a class certification"). The fact that some of the claims may ultimately be deemed unsuitable for class treatment should not deprive the insured of the benefit of a defense, provided the complaint fairly can be read to assert one or more claims that fall within the scope of the policy.[7] *Simplex Technologies, Inc.* v. *Liberty Mut. Ins. Co.*, 429 Mass. at 199 ("[t]hat some, or even many, of the underlying claims may fall outside the coverage does not excuse [the insurer] from its duty to defend these actions").

2. *The deductible endorsement.* As an alternate ground for denying coverage, Pacific argues that the judge's ruling should be affirmed because the policy's deductible endorsement tied Pacific's duty to defend to its duty to indemnify. We set out the relevant portions of the deductible endorsement here:

---

[7]That said, it appears that the majority of the class members in this case do not have claims that fall within the scope of the policy. It was incumbent upon Pacific, if it wanted to limit or define its duty to defend so as to avoid potential responsibility for defense costs associated with those claims, to seek a declaration earlier in the litigation.

"1. Our obligation to pay damages and ALAE[8] under this policy applies only to sums the insured becomes legally obligated to pay as damages and ALAE in excess of the Deductible amounts shown in the schedule.

". . .

"2. You have entered into an agreement with the claim service organization shown in the Schedule (the 'Claim Service Organization'), whereunder the Claim Service Organization shall provide investigation, administration, adjustment, and settlement services, and shall provide for the defense of all claims or 'suits' arising under this policy. Accordingly, you agree with us that we shall not have any duty to defend any such 'suit,' or to pay with respect to any claim or 'suit' any ALAE within the Deductible amounts.

". . .

"4. We will have the right at our sole discretion:

". . .

"(c) to assume the defense and control of any claim or 'suit' seeking payment of damages under this policy that we believe will exceed the Deductible Per Occurrence."

"In examining the endorsement, which amounts to an exclusion from coverage, we are required to 'construe the words of the policy in their usual and ordinary sense,' *Barnstable County Mut. Fire Ins. Co.* v. *Lally*, 374 Mass. 602, 605 (1978), taking into account 'what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.' " *Liquor Liab. Joint Underwriting Assn. of Mass.* v. *Hermitage Ins. Co.*, 419 Mass. 316, 320 (1995), quoting from *Hazen Paper Co.* v. *United States Fiduciary & Guar. Co.*, 407 Mass. at 700. A reasonable reading of the deductible endorsement does not

---

[8]ALAE stands for Allocated Loss Adjustment Expense, and is defined in the endorsement, in relevant part, to mean "the expenses, costs and interest provided for under Section 1 — Coverages, Supplementary Payments — Coverages A and B of this policy, or any other expenses, costs, or interest incurred in connection with the defense of any such 'suit.' "

support Pacific's position that its duty to pay defense costs was limited to actions in which it had a duty to pay damages. Compare *Air Liquide Am. Corp.* v. *Continental Cas. Co.*, 217 F.3d 1272, 1279-1280 (10th Cir. 2000) (policy language explicitly provided that "we shall not have any duty to defend any such 'suit,' or to pay with respect to any claim or 'suit' any ALAE").[9]

We read the deductible endorsement as providing that Pacific has the obligation to pay damages and defense costs once they exceed the deductible amount of $500,000. We do not read the deductible endorsement as making the duty to defend coextensive with the duty to indemnify. Nor does the fact that the deductible endorsement provided that Omega had entered into an agreement with a claim service organization to provide a defense to claims and suits arising under the policy relieve Pacific of its duty to pay for the defense once the deductible was satisfied. The endorsement provided that Pacific had no duty to defend such suits "or to pay with respect to any claim or 'suit' any ALAE *within the Deductible amounts*" (emphasis added). That language reiterates that once the deductible amount was reached, Pacific's duty to pay defense costs under the policy was triggered. Similarly, the fact that the deductible endorsement gave Pacific the right to take control of any litigation where damages might exceed the deductible does not displace Pacific's duty to reimburse defense costs exceeding the deductible amount.

For all of these reasons, we vacate the judgment for Pacific and remand this case to the Superior Court for further proceedings.

*So ordered.*

---

[9]Unlike here, the cases on which Pacific relies involved policies that expressly tied the obligation to pay defense costs to claims paid under the policy. See, e.g., *Stonewall Ins. Co.* v. *Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1219 (2d Cir. 1995); *Northland Cas. Co.* v. *HBE Corp.*, 160 F. Supp. 2d 1348, 1364 (M.D. Fla. 2001); *FMC Corp.* v. *Plaisted & Cos.*, 61 Cal. App. 4th 1132, 1201 (1998); *Cinergy Corp.* v. *St. Paul Surplus Lines Ins. Co.*, 873 N.E.2d 105, 114 (Ind. Ct. App. 2007).