**Thomas WILLIAMS and Sanford Kelsey, Appellants–Plaintiffs,**

v.

**Kelly Eugene THARP and Papa John's U.S.A., Inc., Appellees–Defendants.**

**No. 29A02–1003–CT–283.**

Court of Appeals of Indiana.

Sept. 30, 2010.

---

Arend J. Abel, Michael J. Blinn, Cohen & Malad, LLP, Indianapolis, IN, Attorneys for Appellants.

Julia Blackwell Gelinas, John M.T. Chavis, II, Lucy R. Dollens, Frost Brown Todd LLC, Indianapolis, IN, Attorneys for Appellee, Kelly Eugene Tharp.

John B. Drummy, Mark D. Gerth, Jeffrey D. Hawkins, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellee, Papa John's U.S.A., Inc.

## OPINION

CRONE, Judge.

### Case Summary

Thomas Williams and Sanford Kelsey were handcuffed and detained for over an hour in Williams's driveway after Kelly Eugene Tharp, a Papa John's pizza delivery driver, told a passerby and a police officer that Kelsey had "pulled a gun" inside the Papa John's restaurant where Kelsey and Williams had recently paid for and picked up their pizza. Police searched Williams and Kelsey in full view of their families and neighbors and found no gun. The two men sued Tharp and his employer, Papa John's U.S.A., Inc., for defamation, false imprisonment, negligence, and intentional infliction of emotional distress. The trial court determined that Tharp's statements were covered by a qualified privilege developed to protect those who report suspected criminal activity and entered summary judgment in favor of Tharp and Papa John's. Williams and Kelsey appealed.

While the appeal was pending, Tharp pled guilty to falsely reporting that Kelsey had a gun inside the restaurant. As to Williams and Kelsey's appeal, the Indiana Court of Appeals ruled in their favor, but the Indiana Supreme Court upheld the trial court's judgment in favor of Tharp and Papa John's. The supreme court determined that Williams and Kelsey had failed to establish a genuine factual dispute regarding whether Tharp knew that his

statements were false and thus abused the qualified privilege. The court also noted that after it held oral argument, Williams and Kelsey petitioned to file a motion for relief from the trial court's judgment based on Tharp's guilty plea to false reporting. The court denied Williams and Kelsey's petition and said that they could file a motion for relief with the trial court, which could consider whether the motion was filed within a reasonable time and should be granted. Williams and Kelsey then filed a motion for relief from judgment with the trial court, which summarily denied it.

Williams and Kelsey ("Appellants") now appeal the trial court's denial of their motion for relief from the judgment in favor of Tharp and Papa John's ("Appellees"), asserting that their motion was filed within a reasonable time and that Tharp's guilty plea creates a genuine factual dispute regarding whether he knew that his statements were false and thus abused the qualified privilege. We agree with Appellants on both counts and reverse and remand for further proceedings consistent with this opinion.

### Facts and Procedural History

In *Williams v. Tharp*, 914 N.E.2d 756 (Ind.2009),[1] Justice Dickson (joined by Chief Justice Shepard and Justice Sullivan) outlined the relevant facts as follows:

> On February 19, 2005, around 9:30 p.m., the plaintiffs [Kelsey and Williams] drove to a Papa John's restaurant to pick up an order. Kelsey wore a full-length tan coat and at the front of his waist a rectangular black fanny pack with silver reflective material. Williams planned to pick up the tab, but inside the restaurant Kelsey contributed by handing cash to Williams, which Kelsey removed from his brown leather bi-fold wallet inside the fanny pack. Williams accepted the money and paid the bill by credit card. The men left the store and drove directly home.

> Tharp worked that night as a delivery driver. He had never met and did not know the plaintiffs. While the plaintiffs were paying, Tharp had come to the front of the store and, according to his deposition testimony, "saw a guy at the counter, and he was looking down ..., and he pulled out what I thought was a gun." Tharp said the man "looked up.... He didn't move his head, he moved his eyes, and he saw me looking at him, and he stuck his hand back in his coat." Tharp "went out the door, and whoever was there, the first person it was ... I said, we need to watch that guy because I think he had a gun. He pulled out a gun, and he stuck it back in when he thought—when he saw me looking at him." The passerby called police. Meanwhile, Tharp returned inside and told another restaurant employee, Christian Martin, that one of the customers had a gun. Martin walked to the front of the store and noticed Kelsey's fanny pack but did not see a gun.

> The Westfield, Indiana, Police Department dispatched Officer Jeff Frolick to Papa John's "on a report of a person carrying a weapon." The officer happened to be across the street at the time, so he arrived quickly, but the plaintiffs had already left. After parking, Officer Frolick spoke with two men

1. Indiana Appellate Rule 22(A) provides in pertinent part that "[a]ll Indiana cases shall be cited by giving the title of the case followed by the volume and page of the regional and official reporter (where both exist), the court of disposition, and the year of the opinion[.]"

For reasons unknown, Appellants do not provide the North Eastern Reporter citation for *Williams* in their appellate briefs, but rather cite to a copy of the slip opinion in their appellants' appendix.

in the parking lot—one was Tharp, who falsely identified himself as "Arthur Tharp"; the other was the passerby. Tharp told the officer that "two black males came into Papa John's Restaurant, one was wearing a long tan coat and he pulled a hand gun out of his waistband or a holster and then put it back into some type of holder." Tharp gave Officer Frolick the license plate number, which he had written down, and a description of Williams's car. Frolick relayed this information to dispatch. Tharp described the weapon as a medium-sized silver gun with a brown wooden handle with two small silver circles. He told Officer Frolick that he had been standing behind the clerk at the register when he saw the gun. (Later in his deposition Tharp recalled the gun as having a black grip with small silver circles on the handle.) It is undisputed that Tharp never claimed that either plaintiff committed a robbery, made threats, demanded money, or pointed a gun at anyone.

Officer Frolick told Tharp to stay by the police car while he went inside to speak with other employees. None of the three other employees reported that the store had been robbed or that anyone had made threats with a gun or demanded money. Frolick went behind the counter to where he understood Tharp to say he had been standing, but the officer did not think someone standing in that location could see a customer's waist and believed that Tharp, who is shorter than Frolick, could not have seen what he claimed. When Officer Frolick returned outside, Tharp was gone. Tharp explained at his deposition that he fled because he had outstanding warrants and feared arrest once his identity was discovered and that "what I saw was the only motivation. I didn't—

I didn't really want to talk to police that night."

After Williams and Kelsey made the short drive to Williams's home and parked, police ordered them out of the car at gunpoint, ordered them to their knees, and handcuffed them, thereafter detaining the men for over an hour while family and neighbors looked on. Police told the men they were investigating a report of someone "flashing a gun around at the Papa John's location" or "pulling a gun out." No officer said they were investigating a robbery. Police found no gun, and the men were released.

Tharp had worked for Papa John's elsewhere twice before. The first stint ended with a firing and a later conviction for theft. He used a false name for his second period of employment, which ended because of his incarceration for fraud stemming from events unrelated to his employment. When hired the third time, he used his father's name, social security number, and driver's license number. After he left the scene on February 19, Tharp did not return to work at Papa John's (he later learned that he was fired). Tharp later returned money to Papa John's that was in his car when he left and penned a letter, maintaining, "I don't care what that Black guy says—he was getting ready to rob the store. Why else put his hand on his gun & start to pull it out[?]"

The plaintiffs sued Papa John's and Tharp, seeking compensatory and punitive damages, alleging that Tharp's statement constituted defamation per se, that the plaintiffs were falsely imprisoned as a result, that Tharp intentionally inflicted emotional distress upon them, and that Tharp's actions were negligent. Papa John's was alleged to be liable under the doctrine of respondeat superior as well as for negligent hir-

ing, retention, and supervision. Papa John's moved for summary judgment, and Tharp joined that motion. Papa John's also moved to strike certain items of evidence that the plaintiffs designated in their opposition to summary judgment, including paragraph 9 of Officer Frolick's affidavit (stating his belief that Tharp could not see a customer's waist from behind the counter) and paragraph 10 (his testimony based on reviewing Papa John's surveillance video), as well as in-car video from Frolick's vehicle and a transcript of that video.

The trial court granted summary judgment on all counts. The court held that a qualified privilege protected Tharp's statements, compelling summary judgment for defamation, as well as for negligence, intentional infliction of emotional distress, punitive damages, and, with no underlying tort, negligent hiring. The court also granted summary judgment on the plaintiffs' claim of false imprisonment, concluding that a false report to police was insufficient to create liability. The trial court granted in part and denied in part Papa John's motion to strike. The court struck the video taken from Officer Frolick's car at the scene as well as paragraph 10 of his affidavit, but declined to strike paragraph 9. The Court of Appeals reversed and remanded on each count. [2]

*Id.* at 759–61 (footnote omitted).

Our supreme court granted transfer and addressed the following contentions raised by Appellants:

(1) the designated evidence creates a genuine issue of material fact as to whether Tharp abused the qualified

privilege, precluding summary judgment based on qualified privilege for the plaintiffs' claims of defamation, false imprisonment, intentional infliction of emotional distress, negligence, negligent hiring, and punitive damages; (2) the trial court erred in striking the in-car video and Officer Frolick's observations of the security video, which, if admitted, more clearly demonstrate the existence of a genuine issue of material fact; and (3) the language of the complaint was sufficient to allege the plaintiffs' defamation claim.

*Id.* at 762.

Because the majority's analysis of the first issue is critical to our analysis, we quote from it at length:

The trial court believed that a qualified privilege protected Tharp's statements, and accordingly granted summary judgment in the defendants' favor on the plaintiffs' defamation claim. We agree.

A qualified privilege "applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he had a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Bals v. Verduzco,* 600 N.E.2d 1353, 1356 (Ind.1992) (internal quotation marks omitted). As a defense to defamation, the qualified privilege operates not to "change the actionable quality of the words published, but merely [to] rebut [ ] the inference of malice that is [otherwise] imputed." *Holcomb v. Walter's Dimmick Petroleum, Inc.,* 858

---

**2.** *See Williams v. Tharp,* 889 N.E.2d 870 (Ind. Ct.App.2008), *vacated by* 914 N.E.2d 756 (Ind. 2009). As will be explained more fully *infra,* before we issued our opinion in *Williams,* Appellants filed with the trial court a motion

for relief from judgment based on Tharp's guilty plea to false reporting, which the trial court struck because Appellants should have filed an application for leave to file such a motion with this Court.

N.E.2d 103, 106 (Ind.2006) (internal quotation marks omitted). To merit its protection, "[t]he burden is upon the defendant in the first instance to establish the existence of a privileged occasion for the publication, by proof of a recognized public or private interest which would justify the utterance of the words." *Bals*, 600 N.E.2d at 1356. Then "the plaintiff ... has the burden of overcoming that privilege by showing that it has been abused." *Id.* When speaking of abuse, "the essence of the concept is not the speaker's spite but his abuse of the privileged occasion by going beyond the scope of the purposes for which privilege exists." *Holcomb*, 858 N.E.2d at 106–07 (internal quotation marks omitted). And "[u]nless only one conclusion can be drawn from the evidence, the question of whether the privilege has been abused is for the jury." *Kelley v. Tanoos*, 865 N.E.2d 593, 601 (Ind.2007).

The privileged occasion implicated in this case relates to the public interest in "encourag[ing] private citizens and victims not only to report crime, but also to assist law enforcement with investigating and apprehending individuals who engage in criminal activity." *Id.* The chief benefit is "enhanced public safety by facilitating the investigation of suspected criminal activity." *Holcomb*, 858 N.E.2d at 108....

On the other hand, a reporting citizen may, out of an excess of caution or even for a nefarious purpose, make false accusations, and our citizens' equally valid interest in having reputations untarnished by false imputations of criminal misconduct has been a cornerstone of defamation law for hundreds of years. *See State ex rel. Lopez v. Killigrew*, 202 Ind. 397, 401–02, 174 N.E. 808, 810 (1931). Because of the compelling public interest in encouraging citizens to report suspected wrongdoing, however,

the law recognizes a limited defense to civil liability premised on erroneous reports of criminal conduct to police: "[I]t is well established that in Indiana, communications made to law enforcement to report criminal activity are qualifiedly privileged." *Kelley*, 865 N.E.2d at 600; *see id.* at 599–601 (collecting cases). This Court has also noted protection for communications to private citizens that further the same end: enhancing public safety by facilitating the reporting of crime. *Id.* at 600–01. But the privilege is not without limits: a statement "may lose its privileged character upon a showing of abuse wherein: (1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth." *Bals*, 600 N.E.2d at 1356.

Against this backdrop, the plaintiffs on appeal do not question that Tharp's statements fell within the privileged occasion mentioned above, but argue that they came forward with evidence which creates genuine issues of material fact as to whether the privilege was abused. Specifically, the plaintiffs do not argue that Tharp was primarily motivated by ill will (he had never met the plaintiffs before), or was guilty of excessive publication (he told only a few people at the restaurant and responded to Officer Frolick's investigation), but argue that they designated evidence to create a genuine issue about whether Tharp made his statement "without belief or grounds for belief in its truth."

. . . .

.... A citizen who reports wrongdoing to police knowing that the information is faulty fails to earn protection against a later civil action. But merely

arguing about what the speaker should have known is insufficient to show that the speaker made a statement "without belief ... in its truth." *Bals*, 600 N.E.2d at 1356....

[W]ould or could the designated evidence, or the reasonable inferences drawn therefrom, create a genuine issue of material fact regarding whether Tharp made the statement knowing it to be false? The plaintiffs label this "a quintessential issue of fact," and we realize that a defendant's state of mind is ordinarily a question for the jury. *See, e.g., Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 707 (Ind.Ct.App.1999).[W]e find that the plaintiffs have not designated sufficient evidence to give rise to a genuine issue about whether Tharp made the statement knowing it to be false. Nor was he so obviously mistaken as to support a reasonable inference that he had lied.

. . . .

In this case, the plaintiffs rely on several items of evidence which they contend gave rise to a genuine issue of material fact regarding whether Tharp made his accusations without belief or grounds for belief in their truth: (1) Officer Frolick's testimony that it was not possible to see what Tharp claimed he saw from where he had been standing; (2) none of the other three employees saw a gun (one of whom explained that Tharp, after having left the store, returned inside while the plaintiffs were still present and reported that he thought Kelsey had a gun); (3) Tharp's admitted record of misconduct, his providing a false name to police, and his flight from the scene; and (4) Tharp's inconsistent descriptions of the gun. Further, the plaintiffs contend that the evidence excluded on the motion to strike would further establish "the fact that Tharp was not merely mistaken, but mendacious."

That no other employee thought Kelsey had a gun fails to defeat the privilege. It bears stating the obvious—in a qualified privilege action, the reporting citizen is necessarily mistaken about what he thought he saw. Inasmuch as liability for defamation does not exist where statements are true, the privilege exists to protect tipsters from liability for making inaccurate reports. Thus, "the issue is not the factual accuracy of the statements." *Kelley*, 865 N.E.2d at 602. This evidence, at most, shows that other people disagreed with Tharp's belief that Kelsey had a gun, and a person's subjective state of mind is not ordinarily established by majority vote. *See Bals*, 600 N.E.2d at 1357. The plaintiffs cannot show that the privilege was abused by pointing to the fact that other people disagreed with Tharp's belief or that Tharp's belief turned out to be mistaken, especially where as here one coworker reported, "I did notice the grey and black fanny pack on the one gentleman, but as I said before there was no gun vis[i]ble." As in *Bals*, this evidence does not support a reasonable inference that Tharp actually lacked belief in the truth of his statement that Kelsey had pulled out a gun. "By simply denying the factual content of [the defendant's] reports, or by referring to other evidence disputing such content, [the plaintiff] does not present substantial evidence that [the defendant] had no grounds for belief in the truth of [his] statement." *Bals*, 600 N.E.2d at 1357. In other words, although others may have disagreed and reached a different conclusion, "[t]he election to make one of two reasonable interpretations does not demonstrate" a knowing disregard for the truth. *Burns v. Rice*, 157 Ohio

App.3d 620, 813 N.E.2d 25, 36 (2004), *appeal denied.*

The plaintiffs add that evidence that Tharp left the store and told the passerby about the gun, then went back into the store and told a coworker about the gun, belies any notion that Tharp truly believed the store was about to be robbed. Although this argument was not made below, it similarly misses the point. It is undisputed that Tharp told Officer Frolick only that Kelsey had pulled out a gun and put it back and that he never claimed that either plaintiff committed a robbery, made threats, demanded money, or pointed a gun at anyone (although he expressed a belief in his later letter that he thought the plaintiffs were about to rob the store).

The plaintiffs' argument that Tharp's inconsistent descriptions of the gun proves he had no belief in his statements also fails to create a genuine issue of material fact regarding whether Tharp stated that Kelsey pulled out a gun knowing the statement was false. During his deposition, Tharp described the gun as having "little silver circles on it" and a grip that he thought was black. According to Officer Frolick, Tharp "described the weapon in detail as a medium-sized silver gun with a brown wooden handle and with two small circles on the handle." The slight difference in descriptions does not create a genuine issue for a jury to decide whether Tharp was lying about believing he saw a gun. If the question was whether Tharp lied about whether the gun he thought he saw had a brown or black handle, the plaintiffs' point may have some traction. But with respect to whether Tharp was lying about his belief that Kelsey had a gun, this discrepancy, at best, shows that his recollection was not perfect. A lapse of memory, however, does not equate to knowledge of falsity; Tharp

consistently maintained his belief that Kelsey had a gun, and his consistent description was of a silver gun with a dark handle. Nor was this description so far afield from the items Kelsey was actually wearing to allow a fact finder to conclude that Tharp completely lacked grounds for his belief. Tharp's description of the gun was consistent with the description of the fanny pack and wallet Kelsey actually possessed (and with the exemplar photos in the appendix and parties' briefs), indicating that Tharp not only had grounds for his belief but in fact believed that Kelsey had a gun.

The plaintiffs also argue that Tharp's criminal record supports an inference that his actions were the result of a deliberate lie, but we believe that such use of his record to prove he acted in conformity with his criminal past by lying to police constitutes improper propensity evidence. It is true that the designated evidence establishes that Tharp did falsely identify himself as "Arthur" and did flee the scene after detailing his version of events. However, the same uncontradicted designated evidence establishes that Tharp provided a false name because he had applied to this Papa John's using the name "Arthur," knew that he had out-standing warrants, and fled to avoid arrest. While correct, as the plaintiffs suggest, that "evidence of flight is relevant as circumstantial evidence of Defendant's consciousness of guilt," the undisputed proof here—Tharp's deposition testimony—indicates that Tharp's use of a false name and flight evidenced consciousness of outstanding warrants, not of a deliberate lie regarding his observations of Kelsey. It is not reasonable to infer that he dodged police because he knew he had lied about Kelsey having a gun. What is significant is that Tharp was

willing to speak at all, and by doing so, he placed himself at risk for arrest.

The plaintiffs' most compelling piece of evidence that Tharp abused the privilege is Officer Frolick's observation that Tharp could not have seen what he claimed from where he was standing. When taken as true, the officer's statement supports an inference—however slight—that Tharp fabricated his account. On the other hand, it is undisputed that Kelsey was wearing a black and silver fanny pack at his waist containing a brown leather wallet and, while inside the store and while Tharp was working at the front of the store, retrieved money from his wallet. Furthermore, another employee testified to seeing the fanny pack. It is also undisputed that Tharp said Kelsey had an object on or near his waist which was silver and black or brown. As the trial court observed, "[t]he description of the alleged gun fits the characteristics of the fanny pack and the location of the fanny pack is the exact location where Tharp said the gun would be." Tharp otherwise accurately described Kelsey's appearance and apparel, as well as Williams's car and license plate number. As in *Holcomb*, "[a]lthough there are logical possibilities," all of these factors are too great a coincidence to support a reasonable inference that Tharp invented his detailed and mostly accurate report. *See Holcomb*, 858 N.E.2d at 107–08. We find that no genuine issue of material fact exists. Whether Tharp's misperception was speculative, negligent, or even reckless, it was not so obviously mistaken to permit a reasonable inference that he lied. The trial court did not err in finding a qualified privilege established as a matter of law, thereby precluding the plaintiffs' claim for defamation.

The plaintiffs also contend that the "same misconduct that prevents the Defendants from relying on qualified privilege also subjects them to liability for False Arrest." But *Holcomb* teaches that the qualified privilege defense to defamation applies as well to the plaintiffs' claim for false imprisonment. 858 N.E.2d at 106–08. Similarly, as regards the plaintiffs' remaining claims of intentional infliction of emotional distress, negligence, and punitive damages, we find that the qualified privilege applicable to citizen reports of suspected criminal activity prevents, as a matter of sound judicial and public policy, a claimant from succeeding on these claims if the privilege applies. Here it applies.

With no underlying tort, the plaintiffs' claim against Papa John's for negligent hiring necessarily fails. *See Health & Hosp. Corp. of Marion County v. Gaither*, 272 Ind. 251, 260, 397 N.E.2d 589, 595 (1979) (noting "a judgment in favor of an employee requires judgment in favor of his employer when the employer's liability is predicated solely upon the acts of said employee").

Because no genuine issue of material fact exists with respect to the defendants' claim of qualified privilege and the privilege is here established as a matter of law, we conclude that the defendants were entitled to summary judgment as to all of their theories of liability.

*Id.* at 762–69 (footnotes and citations to briefs and appendices omitted).

The majority then affirmed the trial court's evidentiary ruling and declined to address Appellants' contention that "the trial court erred in finding that the allegations of the complaint were insufficient to raise a claim for defamation" because its "resolution of the other issues [was] independently dispositive." *Id.* at 770. The

majority affirmed the trial court's grant of summary judgment in favor of Appellees and dropped the following footnote at the conclusion of its opinion:

> On March 27, 2009, the plaintiffs filed an application for leave to file a Trial Rule 60(B) motion for relief from judgment in the trial court, asserting that the trial court's judgment should be set aside because on June 2, 2008, Tharp pleaded guilty to False Reporting, a class B misdemeanor,[3] in violation of Ind.Code § 35–44–2–2(d)(*l*). Inasmuch as there is no apparent justification for the plaintiffs waiting until three weeks after oral argument to file the present application, we reject the application and affirm the trial court's judgment. The plaintiffs are free to seek relief from the trial court's final judgment under Trial Rule 60(B)(8), and the trial court may consider whether such a motion is "filed within a reasonable time" and should be granted.

*Id.* at 770 n. 7.[4]

Our supreme court issued its decision in *Williams* on October 13, 2009. On October 22, 2009, Appellants filed a motion for relief from judgment under Trial Rule 60(B)(8) with the trial court. Appellees filed responses thereto, and Appellants filed a reply, all of which were accompanied by evidentiary exhibits. Appellees also requested oral argument. On Febru-

---

**3.** As we explain in footnote 9, *infra,* we believe that a more accurate description of this crime is false informing.

**4.** Justice Boehm dissented, opining that "the statements to the passerby were not subject to any privilege, and their later repetition to the police was privileged only if the statements were not made with knowledge that they were false." *Williams,* 914 N.E.2d at 771 (Boehm, J., dissenting). He further opined that the majority had "overlook[ed] some salient facts and the reasonable inferences from the aggregation of those facts" and that

> [a]lthough any one of these facts in isolation may be insufficient to establish that Tharp knowingly made false allegations, I think it is a fair inference from these facts, taken in the aggregate, that Tharp first recklessly or knowingly defamed the plaintiff by his statement to the passerby that the plaintiffs had taken a step towards an armed robbery, then compounded the problem by repeating the charge to the officer with knowledge that it was false. I reach this conclusion on the basis of the evidence before the trial court, and not on the basis of the plaintiffs' motion after oral argument in this court discussed in footnote 7 of the majority opinion.
>
> I agree with the Court of Appeals that summary judgment in favor of the defendants should be reversed, and this case should be remanded for trial.

*Id.* at 771, 772 (Boehm, J., dissenting).

Justice Rucker authored a separate opinion in which he expressed agreement with Justice Boehm's dissent as well as his belief that "events occurring after the trial court entered summary judgment in this case and after the plaintiffs filed their notice of appeal ... seem to undermine completely Tharp's claim of unqualified privilege." *Id.* at 772 (Rucker, J., dissenting). Justice Rucker quoted excerpts from Tharp's guilty plea hearing (which we discuss in more detail *infra*) and acknowledged that although the majority had acted within its discretion in denying the plaintiffs' petition for leave to file a Trial Rule 60(B) motion for relief from judgment,

> despite the procedural irregularity of plaintiffs waiting until after oral argument to seek leave to file their petition, this Court should not, in effect, turn a blind eye to evidence that stands at the very heart of this litigation, namely whether Tharp's statements were made without belief or grounds for belief in their truth. His admissions by way of a guilty plea certainly seem to put the matter to rest. At an absolute minimum Tharp's admissions raise a genuine issue of material fact on the issue. In light of what fairly may be characterized as newly discovered evidence surfacing after the trial court entered summary judgment in Tharp's favor, this Court at the very least should reverse the trial court's judgment and remand this cause for further proceedings.

*Id.* at 773 (Rucker, J., dissenting).

ary 12, 2010, the trial court issued an order denying Appellees' request for oral argument and an order summarily denying Appellants' motion for relief from judgment. This appeal ensued. Additional facts will be provided as necessary.

### Discussion and Decision

Appellants contend that the trial court erred in denying their motion from relief from judgment. Trial Rule 60 reads in pertinent part as follows:

(B) **Mistake—Excusable neglect—Newly discovered evidence—Fraud, etc.** On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons:

(1) mistake, surprise, or excusable neglect;

(2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) entry of default or judgment by default was entered against such party who was served only by publication and who was without actual knowledge of the action and judgment, order or proceedings;

. . . .

(8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).

The motion shall be filed within a reasonable time for reasons (5), (6), (7), and (8), and not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3), and (4). A movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense.

. . . .

(D) **Hearing and relief granted.** In passing upon a motion allowed by subdivision (B) of this rule the court shall hear any pertinent evidence, allow new parties to be served with summons, allow discovery, grant relief as provided under Rule 59 or otherwise as permitted by subdivision (B) of this rule.

■ Appellants take issue with the trial court's ruling in several respects. First, they contend that the trial court erred in failing to issue any written findings. We disagree. Neither Trial Rule 60 nor Trial Rule 52 requires written findings in an order on a motion for relief from judgment, and none of the parties requested such findings pursuant to Trial Rule 52(A).[5] In this instance, we decline to impose a requirement for written findings where none exists.

■ Appellants also contend that the trial court erred in failing to hold a hearing on their motion pursuant to Trial Rule 60(D). Again, we disagree. All parties

5. *See* Ind. Trial Rule 52(A) ("Upon its own motion, or the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury or with an advisory jury (except as provided in Rule 39[D]) shall find the facts specially and state its conclusions thereon. The court shall make special findings of fact without request (1) in granting or refusing preliminary injunctions; (2) in any review of actions by an administrative agency; and (3) in any other case provided by these rules or by statute.... Findings of fact are unnecessary on decisions of motions under Rules 12 or 56 *or any other motion* except as provided in Rule 41(B) (dismissal) and 59(J) (motion to correct errors).") (emphasis added).

submitted evidentiary exhibits for the trial court's consideration, and Appellants have failed to direct us to any pertinent evidence that was not before the trial court when it ruled on their motion. "[W]hen there is no pertinent evidence to be heard, a hearing is unnecessary." *Thompson v. Thompson*, 811 N.E.2d 888, 904 (Ind.Ct.App.2004), *trans. denied* (2005).[6]

Appellants make the following corollary assertion:

> Because the trial court neither held a hearing nor stated its findings, it is impossible for this Court to know whether it considered all of the factors dictated by Rule 60(B) and the caselaw applying it.... The trial court's exercise of discretion is not apparent from the record, making it impossible for this Court to determine whether it was appropriate.

Appellants' Br. at 14. Because the trial court ruled on a paper record without conducting an evidentiary hearing, we are "in as good a position as a trial court to determine the force and effect of evidence." *Farmers Ins. Exch. v. Smith*, 757 N.E.2d 145, 148 (Ind.Ct.App.2001). Accordingly, we review the trial court's ruling de novo. *Id.*

■ We have stated that Trial Rule 60(B)(8) "is an omnibus provision which gives broad equitable power to the trial court in the exercise of its discretion and imposes a time limit based only on reasonableness." *Blichert v. Brososky*, 436 N.E.2d 1165, 1167 (Ind.Ct.App.1982). "The determination of what constitutes a reasonable time varies with the circumstances of each case. Relevant to the question of timeliness is prejudice to the party opposing the motion and the basis for the moving party's delay." *Kessen v. Graft*, 694 N.E.2d 317, 321 (Ind.Ct.App.

1998) (citation omitted), *trans. denied.* Additionally, we note that a

> motion for relief from judgment under Trial Rule 60(B)(8) "must allege a meritorious claim or defense." Ind. Trial R. 60(B). A meritorious defense is one showing, if the case were retried on the merit s, a different result would be reached. And in ruling on a T.R. 60(B) motion, the trial court must balance the alleged injustice suffered by the party moving for relief against the interests of the winning party and societal interest in the finality of litigation.

*Parham v. Parham*, 855 N.E.2d 722, 729 (Ind.Ct.App.2006) (citations, quotation marks, and brackets omitted), *trans. denied* (2007).

■ We first address the timeliness issue. The trial court entered summary judgment in favor of Appellees on June 25, 2007. On July 11, 2007, Appellants filed a notice of appeal. On August 7, 2007, the trial court clerk filed a notice of completion of clerk's record, at which point this Court acquired jurisdiction pursuant to Indiana Appellate Rule 8. Tharp entered his plea agreement on June 2, 2008. On June 24, 2008, Appellants filed with the trial court a motion for relief from judgment pursuant to Trial Rule 60(B)(2). On July 11, 2008, we issued our opinion reversing the trial court's decision and remanding for trial. On July 31, 2008, Papa John's filed a motion to strike Appellants' motion for relief from judgment, citing precedent stating that during the pendency of an appeal, a party must file with the appellate court a verified application seeking leave to file a Trial Rule 60(B) motion; if the court determines that the application has sufficient merit, it will remand to the trial court for consideration of the Trial Rule 60(B) grounds, thereby terminating the appeal.

---

**6.** We acknowledge that Appellees requested oral argument, but "argument" by definition is not "pertinent evidence." By contrast, Appellants did not request a hearing of any sort.

Appellants' App. at 112 (citing *Logal v. Cruse*, 267 Ind. 83, 368 N.E.2d 235 (1977), *cert. denied* (1978), and *Southwood v. Carlson*, 704 N.E.2d 163 (Ind.Ct.App.1999)). Appellees filed petitions for rehearing, which we denied on September 10, 2008. On October 10, 2008, Appellees filed petitions to transfer. On November 17, 2008, the trial court granted Papa John's motion to strike. On January 29, 2009, our supreme court granted Appellees' petitions to transfer, thereby vacating this Court's opinion pursuant to Indiana Appellate Rule 58. On February 5, 2009, our supreme court issued an order setting oral argument for March 5, 2009, which was held as scheduled. On March 27, 2009, Appellants filed with the court an application for leave to file a motion for relief from judgment pursuant to Trial Rule 60(B)(8), which the court denied in footnote 7 of its opinion on October 13, 2009. Nine days later, on October 22, 2009, Appellants filed the Trial Rule 60(B)(8) motion that is the subject of this appeal.

As the foregoing procedural history indicates, Appellants sought relief from the trial court's judgment, albeit in the incorrect forum, less than one month after Tharp entered his guilty plea. This Court issued an opinion in Appellants' favor less than three weeks later and subsequently denied Appellees' petitions for rehearing, thus effectively, if temporarily, mooting Appellants' request for relief. Once our supreme court granted Appellees' petitions to transfer, Appellants sought relief in that forum less than two months later. Appellants' decision to wait until after our supreme court held oral argument may well smack of gamesmanship, as Appellees suggest, but the same may be said for Tharp's decision to wait until after the trial court ruled in his favor to plead guilty to false reporting. In any event, given the circumstances of this case and the lack of prejudice to Appellees,[7] we are unwilling to punish Appellants for any procedural missteps committed by their counsel and conclude that their motion for relief from judgment was filed within a reasonable time.[8]

■ We must now determine whether Appellants have alleged a meritorious claim or defense. For purposes of our analysis, it is important to remember that this case was decided on summary judgment, which is appropriate

> only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. Additionally, all facts and reasonable inferences from those facts are construed in favor of the non-moving party. If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper.

*Stonington Ins. Co. v. Williams*, 922 N.E.2d 660, 664 (Ind.Ct.App.2010) (citations omitted), *trans. denied*.

---

7. Appellees claim that they "have been prejudiced by having to incur time and expense in presenting arguments to the Court of Appeals and the Supreme Court while the [Appellants] sat on their hands and failed to properly raise the issues which they now contend require the trial court's judgment be set aside." Papa John's Br. at 23. Appellees cite no authority for the proposition that the expenditure of time and money, standing alone, constitutes prejudice for purposes of a Trial Rule 60(B) analysis.

8. Because the cases cited by the parties regarding the timeliness of Appellants' motion are factually distinguishable, we do not find them persuasive in this fact-sensitive context.

Following the incident involving Williams and Kelsey, prosecutors charged Tharp with four counts: (1) class B misdemeanor false informing (for identifying himself to police as Arthur Tharp); (2) class B misdemeanor false reporting (for "giv[ing] a false report of the commission of a crime, to-wit: male with gun inside of Papa John's Pizza knowing the report to be false");[9] (3) class C felony forgery (for using his father's name and social security number on his Papa John's job application); and (4) class D felony theft (for stealing a Papa John's delivery container). Appellants' App. at 81, 157. Pursuant to a written plea agreement, Tharp agreed to plead guilty to the first three counts, in exchange for the dismissal of the theft count and a three-year executed sentence that would be served concurrently with a sentence that he was already serving for an unrelated matter in Kentucky, resulting in no additional jail time. The plea agreement states in pertinent part:

> The defendant knows the Court will not accept a plea of guilty from anyone who claims to be innocent, and he/she makes no claims of innocence. He/she now state [sic] that he/she did commit

the crime(s) to which he/she is pleading guilty. The defendant further acknowledges that his/her attorney has advised him/her that by his/her plea of guilty, he/she is admitting to the truth of all facts alleged in the indictment and/or information or to an offense included thereunder and that upon entering of such plea the Court shall proceed with judgment and sentence.

*Id.* at 102.

At the guilty plea hearing on June 2, 2008, Tharp indicated that he understood the changes against him. The prosecutor recited a factual basis for the charges, which reads in relevant part as follows:

> Your Honor, if this matter had come to trial the State's evidence would have been on February 19, 2005, Officer Jeff Frolick, of the Westfield Indiana Police Department, responded to a report of a robbery in a Papa John's Restaurant ... in Hamilton County. When he launched his investigation, he responded to the ... location, and Mr. Tharp was there. He identified himself to Officer Frolick as Arthur Tharp and he had been employed at Papa John's under the

---

9. The crimes of "false reporting" and "false informing" are encompassed by a single statute, Indiana Code Section 35–44–2–2. Subsection (c) of the statute provides,

> A person who reports, by telephone, telegraph, mail, or other written or oral communication, that:
> (1) the person or another person has placed or intends to place an explosive, a destructive device, or other destructive substance in a building or transportation facility;
> (2) there has been or there will be tampering with a consumer product introduced into commerce; or
> (3) there has been or will be placed or introduced a weapon of mass destruction in a building or a place of assembly; knowing the report to be false commits false reporting, a Class D felony.

Ind.Code § 35–44–2–2(c). The State did not allege that Tharp committed any of these acts. Subsection (d) of the statute provides in pertinent part,

> A person who:
> (1) gives a false report of the commission of a crime or gives false information in the official investigation of the commission of a crime, knowing the report or information to be false;
> . . .
> commits false informing, a Class B misdemeanor. However, the offense is a Class A misdemeanor if it substantially hinders any law enforcement process or if it results in harm to an innocent person.

Ind.Code § 35–44–2–2(d). Given the factual allegations recited in count 2 and the fact that it was charged as a class B misdemeanor, we think that a more accurate description of the crime alleged is false informing.

name of Arthur Tharp. Office[r] Frolick took a report from him. The report indicated that 2 black males had gone into the restaurant and at least one of them or if not both of them had had hand guns with them and attempted to rob them. [Mr. Tharp] also indicated that the black males were about 6 feet tall, one wearing a long tan jacket, medium size silver hand gun with a brown wooden handle. [Mr. Tharp] indicated that he had dialed 911 as a result of this robbery, um, described the black males to the officer, and indicated they left the area in a sport utility vehicle and provided a license plate number. The Westfield Police investigated. They pulled over the SUV that was bearing the license plate number that Mr. Tharp had given them. And they made an arrest of the two black males that were driving. Neither one of the men had [a] hand gun which was in contravention to what Mr. Tharp had told them. So the officers went back to the Papa John's and spoke to another gentleman there, that was working at Papa John's who could not corroborate any of the defendant's statement regarding the robbery or regarding the flight or the call to 911. The officer then pulled the surveillance tape from the time of the incident and the incident was not on the tape.

*Id.* at 89–90.

Tharp's counsel then asked his client if he "disagree[d] with anything the prosecutor said[.]" *Id.* at 91. Tharp replied,

Um, well I didn't call 911. Someone else did. And they, I didn't say he robbed the store, I said he pulled a gun out and stuck it back in his fanny pack. I was just scared there was going to be violence. And the guy was getting ready to go in the store and I said, "Don't go in that guy has got a gun." And he was the one that called the

police. That is the only thing that's different.

*Id.* The court found that Tharp understood the charges against him and "entered his plea of guilty freely and voluntarily." *Id.* at 93. The court further found that Tharp understood the penalties for the offenses and that there was "a factual basis for the acceptance of the plea of guilty to Count 1, 2, and 3." *Id.* The court then set the matter for sentencing.

At the sentencing hearing on July 1, 2008, Tharp's counsel stated,

Your Honor, I'm in sort of an unusual position with this case of arguing somewhat contrary to what my client would like to do.... With regard to the acceptance of the plea, as far as Counts 1 and 3, I don't have any issue with there being an appropriate factual basis for the Court to accept the plea. As far as Count 2, the Court knows what the factual basis was at the guilty plea hearing. Subsequent to that there was a Pre–Sentence Investigation. I've highlighted the part of the Pre–Sentence Investigation on page 8 where the defendant indicates at the top of it defendant's version. "As far as the crime report, I honestly thought the man had a gun. I probably overreacted because of being tied up and robbed at gunpoint before. If I caused Mr. Williams or Mr. Kelsey harm, I'm truly sorry." It seems that he's professing his innocence as to that particular count again. Obviously, the crime report turned out to be incorrect but at the time the police were called, in my opinion, he honestly believed a crime was occurring.... Also, he didn't know, there's no evidence that he knew either one of these two alleged victims so there's no vindictiveness argument that could be made. So it leads me to believe that he in fact didn't commit Count 2 and so I cannot stand and support the

plea agreement. Mr. Tharp wants you to accept the plea agreement and sentence him pursuant to its terms. I've said my piece on that. I believe if he was guilty and if the Court does accept the guilty plea in its entirety, it's a favorable sentence for him, especially in light of his criminal history. In fact, it is a very, very good deal for him. And I think that's one of the reasons why Mr. Tharp would like you to accept it, but as an officer of the Court and being in a position of seeking the truth and trying to find out what really happened, I'm not sure this plea accomplishes that.

*Id.* at 294–96.

The prosecutor responded,

Counsel indicates as an officer of the Court he has to be concerned with the truth. Let's look at what the truth is. The defendant reported a, when he called 911 about the robbery, he reported some pretty detailed things about what happened. One of the black males, approximately six feet tall wearing a long, tan jacket pulled a medium-sized silver handgun with brown wooden handles from his waistband. Yet there was no gun and now the defendant indicates a very brief statement in his PSI that, well, maybe there wasn't a gun and I didn't see this and I quote, "medium-sized silver handgun with brown wooden handles taken from the waistband of the individual". That was false. He indicated the factual basis at the guilty plea. The Court found that there was a factual basis for the guilty plea. If he wants to minimize in his PSI, then fine. But the Court can't interlineate what counsel wants to do with the plea agreement, dismiss one charge, proceed on the other

two charges that we have a plea agreement on. Either the Court has to accept or reject. I don't think this, based on the factual basis that was elicited at the guilty plea when the Court did find a factual basis for all three charges, along with the affidavit for probable cause, I don't think there's any reason to reject this plea agreement for that specifically. And the defendant himself is not asking for that.

*Id.* at 296–97.[10]

The court asked if Tharp wanted to make a statement. Tharp replied,

I want you to accept the agreement, please. I'm sorry about my behavior. I was scared and what I did was wrong and I'm very sorry. I apologize to Mr. Kelsey and Mr. Williams for any undue grief that I caused them. I was just, I tried, I did the best job that I could at Papa John's the four months I worked there and I'm sorry that this whole thing happened. I apologize to everyone. I'm very sorry. Thank you, Judge.

*Id.* at 298. The court then entered judgment of conviction on counts 1 through 3 and sentenced Tharp pursuant to the plea agreement.

Appellants now contend that, "[a]t the very least, this evidence—none of which existed when the Trial Court entered summary judgment in favor of Tharp and Papa John's—is sufficient to entitle Mr. Williams and Mr. Kelsey to a jury determination of whether Tharp knew his accusation was false when he made it." Appellants' Br. at 19. We must agree. Appellees make much of Tharp's insistence that he saw Kelsey pull out a gun

inside the Papa John's restaurant, but the conflict inherent in Tharp's self-interested utterances and his insistence on pleading guilty to falsely reporting a "male with [a] gun inside of Papa John's Pizza" creates a paradigmatic genuine issue of material fact that a jury must resolve. *See Williams*, 914 N.E.2d at 761 ("A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth."); *see also Insuremax Ins. Co. v. Bice*, 879 N.E.2d 1187, 1190 (Ind.Ct.App. 2008) ("When the facts are peculiarly in the knowledge of the movant's witnesses, there should be an opportunity to impeach them at trial, and their demeanor may be the most effective impeachment.")

(citing *Blinn v. City of Marion*, 181 Ind. App. 87, 92, 390 N.E.2d 1066, 1069 (1979), *trans. denied* ), *trans. denied*.[11] Given that the existence of a genuine issue of material fact would necessarily preclude summary judgment in Appellees' favor, we conclude that Appellants have established a meritorious defense for purposes of Trial Rule 60(B).[12]

■ Finally, we must "balance the alleged injustice suffered by the party moving for relief against the interests of the winning party and societal interest in the finality of litigation." *Parham*, 855 N.E.2d at 729. Here, Appellants were handcuffed and searched in front of their families and neighbors after Tharp reported that Kelsey had "pulled a gun" in the Papa John's

---

11. In support of his response to Appellants' motion for relief from judgment, Tharp attached a deposition dated January 7, 2010, in which he averred, "I pled guilty to Counts 1, 2, and 3 only because in exchange for doing so, the charge for Count 4 Theft (a Class D Felony) was dismissed *and* I received *no* additional jail time to time I was already serving on unrelated crimes in the Western Kentucky Correctional Institute." Tharp's App. at 158. Tharp also averred,

> 7. I felt that there was no way I could turn down the plea agreement that was offered by the State of Indiana since it resulted in no additional jail time for me and the dismissal of the charge of Theft, a Class D Felony, against me.
> 8. I pled guilty despite the fact that I continued to, and still, honestly believe that I saw a man I now know to be Kelsey Sanford [sic] pull out a hand gun from his waistband area at the Papa John's restaurant counter and then return it to his waistband area, and I attempted to make my position known to the Court at the guilty plea hearing and sentencing hearing through my own statements and the statements of my attorney.
> 9. I pled guilty despite the fact that I continued to, and still, believe that I did not falsely report any commission of a crime because I never stated that a man I now know to be Kelsey Sanford [sic] was rob-

bing the Papa John's restaurant; instead, I just reported that a man I now know to be Kelsey Sanford [sic] had a gun and put it back, and I attempted to make my position known to the Court at the guilty plea hearing and sentencing hearing through my own statements and the statements of my attorney.

*Id.* Merely because Tharp affirmed the truth of the foregoing under penalties for perjury does not preclude a trier of fact from disbelieving this self-serving (and largely subjective) version of events. Appellants do not specifically assert that, and thus we do not specifically address whether, Tharp's guilty plea is conclusive of any fact at issue in this case. At the very least, the charge to which Tharp pled guilty is sufficient to raise a genuine issue of material fact as to whether he knew that his statements regarding the gun were false.

12. Papa John's argues that Appellants' motion for relief from judgment "should be denied because, although it addresses one ground for affirming this court's entry of summary judgment, it does not address the alternate grounds for the trial court's decision; namely, that the evidence negates one or more elements of [Appellants'] claims." Papa John's Br. at 28. We rejected Appellees' argument to this effect in our prior opinion in this case, and we see no reason to revisit our decision.

restaurant. Appellants' claims were thrown out on summary judgment based on the trial court's conclusion that Tharp's statements were covered by a privilege that protects those who report suspected criminal activity. Only after the trial court issued its ruling did Tharp plead guilty to making a false report. Under these circumstances, we conclude that the injustice suffered by Appellants far outweighs any interests that Appellees and society might have in the finality of litigation. Therefore, we reverse the denial of Appellants' motion for relief from judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

FRIEDLANDER, J., and BARNES, J., concur.